UNITED STATES DISTRICT COURT FILED BY_____ D.C.
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION          00 FEB 22 PM 4: 14

CASE NO. 00-6151-Civ-Ungaro-Benages/Magistrate Judge Brown

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA - MIA

JOYCE WILLIAMS, MICHAEL
FERGUSON, JOSEPH PATRICK
MCMULLEN, DELORES OKONMAH,
BERNICE SHORTER-MEARES,
CONSTANCE ECHEBIRI, MIA DAWN
TAYLOR, CARMITA MCMULLEN, KIM
COLSTON, LESTER HENDERSON, and
JOSEPH SMITH, Individually, and on
behalf of all other persons similarly situated,

     Plaintiffs,

vs.

WALGREEN COMPANY,

     Defendant.

_____/

## DEFENDANTS' MOTION TO DISMISS

Defendant Walgreen Co. ("Walgreens") moves to dismiss Plaintiffs' Complaint pursuant to Rules 8, 10(b), 12(b)(6), and 23 of the Federal Rules of Civil Procedure and Rule 7.1 of the Local Rules for the Southern District of Florida. The grounds for this motion and points and authorities in support are set forth in the accompanying memorandum of law.

## **TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      Plaintiffs' Complaint in Its Entirety Should Be Dismissed
        Pursuant to Fed. R. Civ. P. 12(b)(6) as an Improper Pleading . . . . . . . . . . . . . . . . . . . . . 2

        A.      Plaintiffs' "Shotgun Pleading" Style Is Improper . . . . . . . . . . . . . . . . . . . . . . . 2

        B.      Plaintiffs Failed to Meet the Heightened Civil
                Rights Action Pleading Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        C.      Plaintiffs Improperly Commingle Multiple Claims . . . . . . . . . . . . . . . . . . . . . . 8

II.     Plaintiffs' Commingled ADEA Claim Is Improper in a Class Action . . . . . . . . . . . . . . . 10

III.    Plaintiffs' Retaliation Claim Is Commingled and Not Pled with Specificity . . . . . . . . . 10

IV.     Plaintiffs Provide No Factual Support Nor Separately Plead Their
        Constructive Discharge Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V.      Plaintiffs' Improperly Filed FCRA Claims Fail
        to Meet the Jurisdictional Prerequisites . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VI.     Plaintiffs' Claims Are Time-Barred . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        A.      The 180-Day Statute of Limitations Bars Plaintiffs' Title VII Claims . . . . . . . . 14

        B.      Plaintiffs' Claims Fall Outside the 300-Day Look Back Period . . . . . . . . . . . . . 15

        C.      Plaintiffs Cannot Piggy-Back onto a Fatally Defective EEOC Charge . . . . . . . . 16

        D.      Plaintiffs Discrete and Distinct Claims Do Not Establish
                a Continuing Violation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ii

# TABLE OF AUTHORITIES

## CASES

Albert v. Carovano,
    824 F.2d 1333 (2d Cir. 1988) ........................................................................ 6

Aquatherm Indus., Inc. v. Florida Power & Light Co.,
    971 F. Supp. 1419 (M.D. Fla. 1997) ........................................................... 4

Armstrong v. Lockheed Martin Beryllium Corp.,
    990 F. Supp. 1395 (M.D. Fla. 1997) ...................................................... 12, 13

Ayers v. Wal-Mart Stores, Inc.,
    941 F. Supp. 1163 (M.D. Fla. 1996) ........................................................ 12

BMC Indus., Inc. v. Barth Indus., Inc.,
    160 F.3d 1322 (11th Cir. 1998) .................................................................. 2

Beck v. Interstate Brands Corp.,
    953 F.2d 1275 (11th Cir. 1992) .................................................................. 5

Benoit v. Ocwen Fin. Corp.,
    960 F. Supp. 287 (S.D. Fla. 1997),
    aff'd, 162 F.3d 1177 (11th Cir. 1998) ................................................. 3, 6, 9

Beran v. Pizza Hut of Titusville,
    1997 WL 842395 (S.D. Fla. Aug. 19, 1997) .......................................... 12

Burger v. City of Daytona Beach,
    1996 WL 673144 (M.D. Fla. Oct. 9, 1996) ............................................ 19

Calloway v. Partners Nat'l Health Plans,
    986 F.2d 446 (11th Cir. 1993) ................................................................. 17

Chancey v. Southwest Fla. Water Management Dist.,
    1997 WL 158312 (M.D. Fla. Mar. 17, 1997) ......................................... 13

Chaney v. City of Chicago,
    1996 WL 718519 (N.D. Ill. Dec. 12, 1996) ............................................. 6

Cramer v. State of Fla.,
    117 F.3d 1258 (11th Cir. 1997) .................................................................. 2

iii

Cummings v. Palm Beach County,
642 F. Supp. 248 (S.D. Fla. 1986) .................................................................. 5, 6

Delaware State College v. Ricks,
449 U.S. 250 (1980) ...................................................................................... 14

Desai v. Tire Kingdom, Inc.,
944 F. Supp. 876 (M.D. Fla. 1996) ............................................................... 14

Dudley v. Metro-Dade County,
989 F. Supp. 1192 (S.D. Fla. 1997) .......................................................... 15, 18

Farmer v. City of Fort Lauderdale,
814 F. Supp. 1101 (S.D. Fla. 1993) .............................................................. 14

Fullman v. Graddick,
739 F.2d 553 (11th Cir. 1984) ........................................................................ 4

GJR Invs., Inc. v. County of Escambia, Fla.,
132 F.3d 1359 (11th Cir. 1998) ...................................................................... 2

Garvey v. Dickinson College,
775 F. Supp. 788 (M.D. Pa. 1991) ................................................................ 19

Grayson v. K Mart Corp.,
79 F.3d 1100 (11th Cir. 1996) ...................................................................... 17

Griffin v. Air Prod. & Chem., Inc.,
883 F.2d 940 (11th Cir. 1989) ...................................................................... 16

Griffin v. Carlin,
755 F.2d 1516 (11th Cir. 1985) ....................................................................... 9

Hamilton v. Board of School Comm'rs of Mobile County, Ala.,
993 F. Supp. 884 (S.D. Ala. 1996) .............................................................. 2, 6

Haynes v. State of Fla. Dep't of Ins.,
1998 WL 271462 (S.D. Fla. Jan. 26, 1998) ................................................... 13

Hipp v. Liberty Nat'l Life Ins. Co.,
973 F. Supp. 1033 (M.D. Fla. 1997) ........................................................ 16, 17

iv

International Bhd. of Teamsters v. United States,
     431 U.S. 324 (1977) ............................................................................... 9

Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.,
     162 F.3d 1290 (11th Cir. 1998) ................................................... 4, 10

Johnson v. General Elec. Co.,
     840 F.2d 132 (1st Cir. 1988) ........................................................ 4, 5

Khalilha McKenzie v. E.A.P. Management Corp.,
     1998 WL 657524 (S.D. Fla. July 27, 1998) ..................................... 4

La Chapelle v. Owens-Illinois,
     513 F.2d 286 (5th Cir. 1975) ...................................................... 10

Marcus v. Carrasquillo,
     782 F. Supp. 593 (M.D. Fla. 1992) .............................................. 6

Mulhall v. Advance Sec., Inc.,
     19 F.3d 586 (11th Cir.),
     cert. denied, 115 S. Ct. 298 (1994) ............................................. 18

Municipal Util. Bd. of Albertville v. Alabama Power Co.,
     934 F.2d 1493 (11th Cir. 1991) .................................................... 4

Papasan v. Allain,
     478 U.S. 265 (1986) ..................................................................... 5

Pearson v. Macon-Bibb County Hosp. Auth.,
     952 F.2d 1274 (11th Cir. 1992) ................................................... 14

Reiter v. Sonotone Corp.,
     442 U.S. 330 (1979) ..................................................................... 7

Roberts v. Gadsden Mem'l Hosp.,
     835 F.2d 793 (11th Cir. 1988) ......................................... 16, 18, 19

Rush v. McDonald's Corp.,
     966 F.2d 1104 (7th Cir. 1992) .................................................... 17

Sturniolo v. Sheaffer Eaton, Inc.,
     15 F.3d 1023 (11th Cir. 1994) .................................................... 16

v

Weaver v. Florida Power & Light,
    1996 WL 479117 (S.D. Fla. July 16, 1996),
    aff'd, 124 F.3d 221 (11th Cir. 1997) ................................................................. 16

Woodward v. City of Worland,
    977 F.2d 1392 (10th Cir. 1992),
    cert. denied, 509 U.S. 923 (1993) ..................................................................... 9

Zipes v. Trans World Airlines, Inc.,
    455 U.S. 385 (1982) ......................................................................................... 16

## STATUTES

42 U.S.C. § 1981(a)(1) ........................................................................................ 3

42 U.S.C. § 2000e-5(e) ................................................................................ 14, 15

Fed. R. Civ. P. 8 .................................................................................................. i

Fed. R. Civ. P. 10(b) ..................................................................... i, 1, 8, 10, 11, 20

Fed. R. Civ. P. 12(b)(6) ............................................................ i, ii, 1, 2, 11, 12, 20

Fed. R. Civ. P. 23 ........................................................................ i, 1, 3, 10, 20

S.D. Fla. L.R. 7.1 ............................................................................................... i

vi

# INTRODUCTION

Plaintiffs have filed a lawsuit for alleged employment discrimination by Walgreens under theories of Title VII disparate treatment, Title VII disparate impact, § 1981 disparate treatment, retaliation, constructive discharge, and for violation of the Florida Civil Rights Act of 1992 ("FCRA"). Additionally, there is a pendent claim for age discrimination. Plaintiffs allege they are members of a class of similarly situated individuals who claim to have been discriminated against on the basis of their race – Black.

Pursuant to the Rules of Civil Procedure and as a matter of law, this Court should dismiss the Complaint in its entirety based on the following: (1) plaintiffs indiscriminately incorporate every allegation into each count of their Complaint thus constituting an improper "shotgun pleading;" (2) plaintiffs fail to meet the heightened pleadings and notice requirements for civil rights cases and class actions; and (3) plaintiffs improperly commingle causes of action in violation of Fed. R. Civ. P. 10(b). Additionally, this Court should: (1) dismiss the ADEA claim because ADEA claims are not allowed under Fed. R. Civ. P. 23; (2) dismiss the retaliation and constructive discharge claims for failure to plead a cause of action under Fed. R. Civ. P. 10(b) and 12(b)(6); and (3) dismiss the FCRA claim because plaintiffs failed to exhaust their administrative remedies. Finally, this Court should dismiss all claims as untimely or in the alternative strike several of the plaintiffs and many of the allegations as not falling within the actionable time period.

1

## MEMORANDUM OF LAW

I.    **Plaintiffs' Complaint in Its Entirety Should Be Dismissed Pursuant
      to Fed. R. Civ. P. 12(b)(6) as an Improper Pleading**

A.    **Plaintiffs' "Shotgun Pleading" Style Is Improper**

When a complaint contains numerous pages of factual allegations followed by a laundry list

of federal statutes and state laws that a defendant has allegedly violated, and when this laundry list

incorporates each and every factual allegation preceding it, courts throughout this country have

labeled this as a "shotgun pleading." See Hamilton v. Board of School Comm'rs of Mobile County,

Ala., 993 F. Supp. 884, 887 (S.D. Ala. 1996).  The difficulty with such a pleading style is that

wholesale adoption of factual allegations offers no notice, that is no explanation to the defendant of

the correlation between the facts and the legal violations alleged, nor any explanation as to which

claims apply to which defendants. See id.  When this type of pleading is before the Court, the Court

has the duty to dismiss the Complaint and ask that the plaintiff replead. See BMC Indus., Inc. v.

Barth Indus., Inc., 160 F.3d 1322, 1327 (11th Cir. 1998) (noting that a district court clearly has the

power, *sua sponte*, to strike shotgun pleadings); see also Cramer v. State of Fla., 117 F.3d 1258,

1263-64 (11th Cir. 1997) (noting that potential class action has no effect on the decision to strike

shotgun pleadings).

Plaintiffs' Complaint is a textbook example of that condemned practice. See GJR Invs., Inc.

v. County of Escambia, Fla., 132 F.3d 1359, 1368 (11th Cir. 1998) (condemning the use of "shotgun

pleading").  Plaintiffs indiscriminately incorporate every general factual allegation (no fewer than

122 paragraphs excluding numerous subparagraphs) spanning fifty-nine pages into each and every

2

claim for relief. See Complaint ¶¶ 123, 131, 139, and 143.[1] In the thirty remaining paragraphs, which span five pages, plaintiffs provide a laundry list of federal and state statutes that allegedly apply to their claims. Likewise, plaintiffs incorporate thirty-seven paragraphs spanning eighteen pages into each and every separately identified count. What relevance allegations about numerosity, commonality, typicality, adequacy of representation, jurisdiction, venue, the parties, retaliation, and age discrimination have to do with plaintiffs' claims for relief is not a call Walgreens should be required to make. See Complaint ¶¶ 1-3, 7-20, 22(j), 23-37, 41, 47, 49, 51(c), 51(l), 52, 60, 63, 67, 76, 81, 87, 91, 95, 100, 106, 111, 116, 120, 122-23, 128, 131, 136, 139, and 143; see also Benoit v. Ocwen Fin. Corp., 960 F. Supp. 287, 290 (S.D. Fla. 1997), aff'd, 162 F.3d 1177 (11th Cir. 1998) (holding that "incorporating allegations into counts that have no relevance to the claims raised in those counts" makes the pleading "fatally defective").

Another example of "shotgun pleading" occurs in the prayer for relief. Plaintiffs' infer that they are seeking punitive damages under Title VII disparate impact; however Title VII expressly limits compensatory and punitive dames to claims of intentional discrimination – that is, disparate treatment. See Complaint § XII, ¶ 4; see also 42 U.S.C. § 1981a(1).

The numerous admonishments by courts throughout the Eleventh Circuit as to "shotgun pleading" applies "particularly in employment discrimination [and Fed. R. Civ. P. 23 class] actions where myriad factual allegations and legal theories are often consolidated into . . . one set of 'general allegations' which, in turn, is incorporated by reference wholesale into every count of the

---

[1] Paragraphs 123, 131, 139, and 143 provide that "PLAINTIFFS incorporate Paragraph 1 through 118 as fully set forth herein." Walgreens believes that plaintiffs also intended to include ¶¶ 119 through 122 because ¶ 118 ends in the middle of providing factual allegations of discrimination pertaining to Mr. Smith.

3

complaint." Khalilha McKenzie v. E.A.P. Management Corp., 1998 WL 657524, at *1 (S.D. Fla. July 27, 1998); see also Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1333 (11th Cir. 1998); Benoit, 960 F. Supp. at 289 (finding that "across the board" assertions against a defendant are particularly improper in the context of a Rule 23 class action).

Overall, this form of shorthand pleading renders the preparation of a coherent response a near impossibility and does nothing more than confuse the issues, and, ultimately, the proceedings. Thus, this Court should dismiss the Complaint as currently stated and require plaintiffs to present a short and plain statement of their many claims, which would allow Walgreens to properly respond and interpose appropriate affirmative defenses.

**B.    Plaintiffs Failed to Meet the Heightened Civil Rights Action Pleading Requirements**

The problems associated with "shotgun pleading" are compounded here by plaintiffs' failure to allege sufficient facts supporting each element of each alleged cause of action. Notice pleading under the Federal Rules does not permit a plaintiff to allege mere conclusions of law; a plaintiff must allege sufficient facts so that each element of the alleged cause of action can be identified. See Municipal Util. Bd. of Albertville v. Alabama Power Co., 934 F.2d 1493, 1501 (11th Cir. 1991). Succinctly, "litigation today is too expensive a process to waste time on fanciful claims." Aquatherm Indus., Inc. v. Florida Power & Light Co., 971 F. Supp. 1419, 1424 (M.D. Fla. 1997).

In a civil rights action such as § 1981, the pleading requirement is heightened because plaintiffs must outline the specific facts that give rise to an inference of discriminatory animus. See Johnson v. General Elec. Co., 840 F.2d 132, 138 (1st Cir. 1988) (a civil rights action must be specifically pleaded to withstand a motion to dismiss); see also Fullman v. Graddick, 739 F.2d 553,

4

556 (11th Cir. 1984); <u>Cummings v. Palm Beach County</u>, 642 F. Supp. 248, 249 (S.D. Fla. 1986) (holding that federal pleading rules are liberal but more than conclusory allegations are required in civil rights actions). Although the Court must take the allegations in a complaint as true when reviewing motions to dismiss, a court is not permitted to read into the complaint facts that are not there. See <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986); <u>see also</u> <u>Beck v. Interstate Brands Corp.</u>, 953 F.2d 1275, 1276 (11th Cir. 1992).

Vague and conclusory statements expose a defendant like Walgreens to a claim "which could be dominated by unpleaded facts," and here, plaintiffs' claims *are* so dominated. <u>Johnson</u>, 840 F.2d at 138. Most of the global allegations have little or no bearing on the events actually experienced by plaintiffs. The gravamen of plaintiffs' claims appear to be that Walgreens had a "continuing policy and pattern or practice of race-based discriminatory treatment of its Black pharmacists" that had an "adverse impact on Black pharmacists." <u>Complaint</u> ¶¶ 4, 6. In addition to repeatedly employing this form of overly broad conclusory allegation, plaintiffs make sweeping allegations, without factual support, that "non-Black pharmacists with less years of experience and with equal or less time with WALGREENS were assigned permanent stores. In fact, many . . . graduates newly hired were often assigned permanent stores almost immediately." <u>Complaint</u> ¶42. Plaintiffs also aver that many of the Black pharmacists "were never informed, interviewed or considered for the Pharmacy Supervisor positions" because of their race. <u>Complaint</u> ¶ 58. Likewise, plaintiffs maintain that Walgreens has "a routine practice and pattern" of "creating disciplinary records." <u>Complaint</u> ¶ 87.

5

Throughout the Complaint, plaintiffs employ these overly broad conclusory allegations.[2] It is exactly these types of inappropriate "legal phraseology which often accompanies civil rights claims" that courts dismiss as "naked assertions of racial discrimination" insufficient under the civil rights statutes. Hamilton, 993 F. Supp. at 887 n.3; see also Albert v. Carovano, 824 F.2d 1333, 1348 (2d Cir. 1988); Benoit, 960 F. Supp. at 289 (holding that more is required than assertions that a defendant has a pattern and practice of discrimination and that, therefore, every plaintiff has a claim for relief).

Walgreens does not maintain that plaintiffs have completely failed somewhere in their sixty-four page complaint to properly plead specific instances of discrimination. The problem is that plaintiffs clutter the Complaint with repetitive, conclusory allegations; fail to provide "specific factual allegations regarding the conduct upon which their claim is based" for several of the plaintiffs; and, haphazardly incorporate 122 paragraphs into each of the claims for relief. Cf. Marcus v. Carrasquillo, 782 F. Supp. 593, 596 (M.D. Fla. 1992); see also Chaney v. City of Chicago, 1996 WL 718519, at *7 (N.D. Ill. Dec. 12, 1996) (dismissing complaint sua sponte as prolix because the twenty-five page complaint contained no more than bare allegations).

For example, plaintiffs allege without specificity that Ms. Shorter-Meares (Complaint ¶¶ 77-81) was not considered for advancement, forced to transfer to stores, and never received an evaluation. These "across the board" allegations in no way enable Walgreens "to focus on these practices in order to respond to the charges [or provide] assur[ances to] the court that the claim has some basis in fact." Cummings, 642 F. Supp. at 249. Even when a specific fact is alleged

---

[2] See Complaint ¶¶ 4, 5, 6, 22, 25- 31, 37-40, 42, 45-46, 51, 56, 59-60, 66-67, 75-77, 80-81, 87, 90, 94-95, 98-100,103-116, 120-23, 128-131, 136-39, 142-43, 148-49, and 151.

STEEL HECTOR & DAVIS LLP

(Complaint ¶ 78), Walgreens is left to infer that the plaintiff sought a management position, that the position was open, that the plaintiff was qualified, that the request for the position was ignored, and most importantly, Walgreens is left to guess which of the multiple claims for relief does the plaintiff use the fact to establish.

The same analysis applied to Ms. Shorter-Meares can be applied with equal force to Ms. Taylor (Complaint ¶¶ 96-100), Ms. McMullen (Complaint ¶¶ 101-106), Ms. Colston (Complaint ¶¶ 107-111), and Mr. Henderson (Complaint ¶¶ 112-16). As detailed more fully below, properly correlating the facts to the law is critical because the standard of pleading and proof amongst different civil rights claims are not the same. See discussion infra Part I.C.

The allegations made by Ms. Taylor are particularly troublesome. Included in the laundry list of violations that conclude her section (Complaint ¶ 100), there is an allegation of a discriminatory act that has no factual support. See Complaint ¶ 100(d) ("disciplining unjustifiably and/or more severely than non-Black pharmacists"). This is just one example from one of the eleven laundry lists of conclusory allegations that complete each plaintiff's section. These lists require Walgreens to first determine their accuracy, then determine their correlation to the facts alleged, and then determine which cause of action is applicable – a burden the Rules of Civil Procedure do not impose on a defendant.

Unless such a claim is subjected to the utmost scrutiny, litigants may succeed solely on the enormity of the risk they can impose merely for the price of paper and a glib draftsman. See, e.g., Reiter v. Sonotone Corp., 442 U.S. 330, 344-45 (1979) (potentially "ruinous effect" of class litigation requires that district courts to "be especially alert to identify frivolous claims brought to extort nuisance settlements").

7

**C.**    **Plaintiffs Improperly Commingle Multiple Claims**

Further compounding the problem of adequately framing an answer is that plaintiffs fail to comply with Fed. R. Civ. P. 10(b), which, in pertinent part provides that "[e]ach claim founded upon a separate transaction or occurrence shall be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth." Based on the headings contained within the Complaint, plaintiffs' attempt to seek relief for at least four different claims – Title VII disparate impact, Title VII disparate treatment, § 1981 disparate treatment, and the FCRA. It is virtually impossible to determine the basis of each claim because plaintiffs improperly incorporate 122 paragraphs spanning fifty-nine pages into each claim. See Complaint ¶¶ 123, 131, 139, and 143.

Even if plaintiffs could properly incorporate every factual allegation, the allegations contained in these incorporated paragraphs are confusing, conclusory, and/or vague, which make determining what facts apply to which cause of action virtually impossible. See discussion supra Part I.A. and I.B. This confusion is underscored because a fair reading of the Complaint and its exhibits suggest that plaintiffs' attempt to seek relief for at least three additional claims – retaliation, constructive discharge, and violation of the ADEA. See Complaint ¶¶ 2, 22(j), 30, 37(i), 37(s), 41, 47, 49, 51(c), 51(l), 52, 60, 63, 67, 76, 81, 87, 91, 95, 100, 106, 111, 116, 120, 122-23, 128, 131, 136, 139, and 143.

All of these claims, whether the four separately identified by heading or the additional three hidden amongst 122 paragraphs, are inherently distinct and certainly require pleading and proof of

8

different elements.[3]  See, e.g., Griffin v. Carlin, 755 F.2d 1516 (11th Cir. 1985) (detailing the differences between a disparate treatment claim and a disparate impact claim and that a plaintiff may not plead one under the guise of the other); Woodward v. City of Worland, 977 F.2d 1392, 1402 (10th Cir. 1992), cert. denied, 509 U.S. 923 (1993) ("Constructive discharge requires considerably more proof than establishing unpleasant working conditions.").

Like in Benoit v. Ocwen Fin. Corp., 960 F. Supp. 287 (S.D. Fla. 1997), aff'd, 162 F.3d 1177 (11th Cir. 1998), the varied and multiple claims require pleading of different supporting factual allegations and raise different affirmative defenses. Plaintiffs' pleading style, with specific reference to these "claim for relief" paragraphs, confuses Walgreens in its ability to decipher the claims brought against it, let alone determine the factual allegations supporting these claims. "[I]f plaintiffs seek relief under multiple statutes and on multiple bases, Rule 10 requires them to set forth their claims separately under each statute." Benoit, 960 F. Supp. at 290; see also Fed. R. Civ. P. 10(b). Not only was this requirement not performed with regard to the four claims for relief, but this requirement was completely disregarded for the ADEA, retaliation, and constructive discharge claims.

At a minimum, this Court should require plaintiffs to replead their claims stating *facts* and not legal conclusions, specifically designate the facts that they believe support each of their theories,

---

[3] In the Supreme Court case of International Bhd. of Teamsters v. United States, 431 U.S. 324 (1977), the Court analyzed the differences between a disparate impact and a disparate treatment claim. A Title VII disparate *treatment* claim requires the plaintiff to demonstrate that the "employer . . . treate[d] some people less favorable than others because of their race, color, religion, sex, or national origin." Id. at 335, n.15. Proof of discriminatory intent "is critical." Id. In contrast, a Title VII disparate *impact* claim involves "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by a business necessity." Id. A plaintiff advancing a claim under disparate impact need not prove discriminatory intent. See id.

9

and set forth each claim based on each separate occurrence of discrimination in a separate count. See Johnson Enters., 162 F.3d at 1333 (recognizing that "[i]f the trial judge does not quickly demand repleader, all is lost . . . [and the court] will be unable to squeeze the case down to its essentials").

## II.    Plaintiffs' Commingled ADEA Claim Is Improper in a Class Action

Paragraph 2 of the Complaint provides that "[t]his Court has jurisdiction over a companion discrimination charge on the basis of age." Complaint ¶ 2. Plaintiffs[4] claim for age discrimination should be dismissed because, as detailed above, plaintiffs have not pled this cause of action separately pursuant to Fed. R. Civ. P. 10(b), have not pled with specificity the factual allegations that support this claim, and most importantly, by indiscriminately incorporating this allegation into every claim for relief, plaintiffs have asserted that they are proceeding in accordance with Fed. R. Civ. P. 23 with respect to their alleged ADEA claim, which according to Rule 23 and case law is patently disallowed. See La Chapelle v. Owens-Illinois, 513 F.2d 286, 289 (5th Cir. 1975); see also Benoit, 960 F. Supp. at 290 (finding pleading fatally defective where plaintiffs improperly incorporated class action and age discrimination claims into every count thus asserting through their "shotgun pleading" that the age discrimination claim was part of the class action).

## III.    Plaintiffs' Retaliation Claim Is Commingled and Not Pled with Specificity

Like the reasons detailed more fully above, plaintiffs claims for retaliation should be dismissed. First, plaintiffs have failed to separately plead these causes of action pursuant to Fed. R.

---

[4] Based on a fair reading of the Complaint, the ADEA claim appears to apply only to Ms. Williams; however, throughout the Complaint, plaintiffs incorporate allegations of age discrimination as to each plaintiff. See Complaint ¶¶ 2, 18, 21, 22(j), 41, 49, 51(c), 51(l), 60, 67, 76, 81, 95, 100, 106, 111, 116, 122-23, 128, 131, 136, 139, and 143. This is precisely why "shotgun pleading" is condemned and courts dismiss or strike these complaints as improper.

Civ. P. 10(b). Through their improper pleading style, their retaliation claims are hidden within 122 paragraphs that Walgreens must sift through to determine relevancy and correlation – a burden that is not required of Walgreens. Second, plaintiffs have indiscriminately incorporated their retaliation claims into every claim for relief and thus aver that every plaintiff is seeking relief from alleged retaliation; however, plaintiffs – with regard to but not limited to Mr. Ferguson, Mr. McMullen, Ms. Okonmah, Ms. Shorter-Meares, Ms. Taylor, Ms. McMullen, Ms. Colston, and Mr. Henderson – have alleged no facts to support these claims. See Complaint ¶¶ 22(j), 30, 37(i), 37(s), 47, 52, 60, 67, 76, 81, 84, 87, 91, 95, 100, 106, 111, 116, 120, 122-23, 128, 131, 136, 139, and 143. [5] Third and finally, the wholesale incorporation of 122 paragraphs spanning fifty-nine pages, which are largely conclusory and/or vague and are mostly irrelevant to a retaliation cause of action, falls short of the heightened pleading requirements in civil rights actions and thus should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## IV.  Plaintiffs Provide No Factual Support Nor Separately Plead Their Constructive Discharge Claim

For the exact reasons detailed more fully above, plaintiffs claims for constructive discharge should be dismissed. First, plaintiffs have failed to separately plead this cause of action pursuant to Fed. R. Civ. P. 10(b). Through their improper pleading style, their constructive discharge claims are hidden within 122 paragraphs that Walgreens must sift through to determine relevancy and correlation – a burden that is not required of Walgreens. Second, plaintiffs have indiscriminately incorporated their constructive discharge claims into every claim for relief and thus aver that every

---

[5] Indeed, only Ms. Williams alleges that she filed an EEOC charge, yet this allegation, which could be the basis for Ms. Williams' retaliation claim, is nevertheless incorporated into the remaining ten plaintiffs' claims.

11

plaintiff is seeking relief from constructive discharge; however, plaintiffs – with regard to but not limited to Ms. Williams, Mr. Ferguson, Ms. Okonmah, Ms. Shorter-Meares, Ms. Echebiri, and Ms. Taylor – have alleged no facts to support these claims. See Complaint ¶¶ 24, 60, 65, 67, 76, 81, 95, 100, 104, 106, 109, 111, 114, 116, 120, 122-23, 128, 131, 136, 139, and 143. Third and finally, the wholesale incorporation of 122 paragraphs spanning fifty-nine pages, which are largely conclusory and/or vague and are mostly irrelevant to a constructive discharge claim, falls short of the heightened pleading requirements in civil rights actions and thus should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## V.     Plaintiffs' Improperly Filed FCRA Claims Fail to Meet the Jurisdictional Prerequisites

In order to file suit under the FCRA, a plaintiff must first exhaust her administrative remedies by filing a charge with the Florida Commission of Human Rights ("FCHR"). See Armstrong v. Lockheed Martin Beryllium Corp., 990 F. Supp. 1395, 1399 (M.D. Fla. 1997). Plaintiffs appear to maintain, though not alleged, that they exhausted their FCRA administrative remedies by filing an EEOC charge. See Complaint ¶¶ 1, 6, 21, 24-25, 37, 41, 52, 60, 67, 76, 81, 95, 100, 106, 111, 116, 122-23, 131, 139, 143-49.[6] Each of the three EEOC charges attached to the Complaint, however,

---

[6] In ¶ 149, plaintiffs maintain that "[a]ll conditions precedent have been met for filing this action and proceeding under the [FCRA]." The argument that the requirements of the FCRA are conditions precedent subject to equitable modification was directly addressed and rejected in Ayers v. Wal-Mart Stores, Inc., 941 F. Supp. 1163, 1166 (M.D. Fla. 1996). In that decision, the court held that the FCRA and Title VII differ significantly in a plaintiff's recourse after dismissal and based on this difference, the requirements of the FCRA are jurisdictional prerequisites, not conditions precedent subject to equitable modification. See id.; see also Beran v. Pizza Hut of Titusville, 1997 WL 842395, at *3 (S.D. Fla. Aug. 19, 1997) (a plaintiff must comply with the administrative requirements of the FCRA).

12

reveal that plaintiffs failed to satisfy the jurisdictional prerequisites for filing a valid FCRA claim. These defects are fatal and warrant dismissal of plaintiffs' FCRA claims.

With regard to the first two EEOC charges, plaintiffs did not check the box requesting dual-filing. See Complaint Exhibits C and D. With regard to plaintiffs' third charge, the attached exhibit is unreadable as to whether Ms. Williams checked any dual-filing box, but what is clear is that plaintiffs have not alleged that they checked any dual-filing box. See Complaint Exhibit E. Courts demand the utmost adherence to this procedural detail, and the failure to check this box is fatal not because of a technicality, but because without such an indication, there is no notice to the employer and the state to initiate an investigation and facilitate conciliation. See Armstrong, 990 F. Supp. at 1399.

Again, with regard to the first two EEOC charges, plaintiffs did not specifically indicate the FCHR as the appropriate state agency for dual-filing purposes. See Complaint Exhibits C and D.[7] In Chancey v. Southwest Fla. Water Management Dist., 1997 WL 158312, at *8 (M.D. Fla. Mar. 17, 1997), the plaintiffs checked the dual-filing box on their charges of discrimination; however, the plaintiffs did not fill in the blank indicating that they wanted a copy of their charge filed with the FCHR, the appropriate state agency. Like the plaintiffs in Chancey, failing to expressly designate the FCHR as the appropriate state agency is fatal, and as a matter of law, plaintiffs FCRA claims

---

[7] Although plaintiffs expressly designated the FCHR in their 1999 EEOC charge (Complaint Exhibit E), this fact alone does not salvage their FCRA claim. First, as detail above, plaintiffs failed to check the dual-filing box, which is fatal. See Chancey v. Southwest Fla. Water Management Dist., 1997 WL 158312, at *8 (M.D. Fla. Mar. 17, 1997). Second, this charge is invalid because filing an amended charge with one agency does not necessarily mean that the Workshare Agreement alleviates the requirement to file with another agency. See Haynes v. State of Fla. Dep't of Ins., 1998 WL 271462, at *3 (S.D. Fla. Jan. 26, 1998) (holding that filing a charge with the FCHR does not amend an original EEOC charge allowing the complainant to proceed with additional claims).

13

must be dismissed. See id.; cf. Desai v. Tire Kingdom, Inc., 944 F. Supp. 876, 880 (M.D. Fla. 1996) (plaintiff properly filed FCRA claim through his filing with the EEOC because the plaintiff (1) had checked the box indicating he wished the charge to be filed with both the EEOC and the state or local agency and (2) had expressly indicated the FCHR as the appropriate agency).

## VI.    Plaintiffs' Claims Are Time-Barred

### A.    The 180-Day Statute of Limitations Bars Plaintiffs' Title VII Claims

Under Title VII, a claimant may file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment action. See 42 U.S.C. § 2000e-5(e).[8] This time period commences at the time the adverse decision is made and communicated to the plaintiff, not when the consequences of the decision actually take effect. See Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (statute of limitations under Title VII began running when the employee found out that his employer decided to terminate his employment, not on the date he received formal notification); see also Pearson v. Macon-Bibb County Hosp. Auth., 952 F.2d 1274, 1279 (11th Cir. 1992) (the discrimination claim accrued as soon as the employer told the plaintiff of its plans to terminate, transfer, or force the resignation of the plaintiff, and not three months later, when the plaintiff was actually terminated); Farmer v. City of Fort Lauderdale, 814 F. Supp. 1101, 1102-1103 (S.D. Fla. 1993) (action accrued on date officer received notice of termination, although notice was oral and subsequent negotiations about alternative employment took place).

---

[8] The statute provides an additional 120 days – resulting in 300 days – to file a charge should the complainant dual-file. However, as illustrated above, Ms. Williams' FCRA charge is fatally defective thus resulting in the application of the 180-day filing limitation. See discussion supra Part V. Even if the FCRA charge were properly filed, an additional 120 days would not salvage Ms. Williams' untimely charge. See discussion infra.

14

With regard to Ms. Williams, plaintiffs allege that Walgreens has a "well-known reputation for discriminating against Black pharmacists." Complaint ¶ 31; see also Complaint ¶ 39 (Walgreens policy of "discriminating against Black pharmacists" is "longstanding"). Ms. Williams confirms this very fact by alleging that as far back as her hiring date, which was 1994, "non-Black pharmacists with less years of experience and with equal or less time with WALGREENS were assigned permanent stores" while her requests were ignored. Complaint ¶ 42. Because, in the few instances where plaintiffs offer specific allegations about discrimination, the alleged adverse decisions were made and communicated to Ms. Williams as far back as 1994, well over two years before filing her charge in 1997, Ms. Williams' claims are barred by federal statute.

In this case, each plaintiff maintains that they rely on Ms. Williams' EEOC charges. See Complaint ¶¶ 1, 24-25, 52, 60, 67, 76, 81, 95, 100, 106, 111, 116, 122-23, 128, 130-31, 136, 138-39, 143, and 149. By relying solely on Ms. Williams charge, which is a defective charge, plaintiffs' Title VII claims are likewise untimely and should be dismissed.

**B.    Plaintiffs' Claims Fall Outside the 300-Day Look Back Period**

Even if plaintiffs' Title VII claims survive the 180-day rule, all the claims must be limited to the 300-day period prior to the filing of the EEOC charge. See 42 U.S.C. § 2000e-5(e)(1); see also Dudley v. Metro-Dade County, 989 F. Supp. 1192, 1198 (S.D. Fla. 1997) (only those incidents which occur during the 300-day period prior to the filing of the EEOC charge are actionable under Title VII). In this case, the charge was filed on January 29, 1997. Because the actionable period extends back to April 5, 1996, Ms. Colston's (who left Walgreens in 1994) and Mr. Smith's (if he left Walgreens prior to April 5, 1996, which is unclear from the Complaint) claims fall outside the 300-day period. See Complaint ¶¶ 107, 117.

15

As to the remaining plaintiffs, any alleged claims of discrimination occurring prior to the look-back period are not actionable and should be stricken from the Complaint. See Griffin v. Air Prod. & Chem., Inc., 883 F.2d 940, 945 (11th Cir. 1989) (conduct prior to the 300-day Title VII period was not actionable); see also Weaver v. Florida Power & Light, 1996 WL 479117, at *9 (S.D. Fla. July 16, 1996), aff'd, 124 F.3d 221 (11th Cir. 1997) (the plaintiff could not include claims of sexual harassment that occurred sometime in 1993 because she first filed a charge with the FCHR on August 28, 1995, and only acts occurring between August 28, 1994, and August 28, 1995, could form part of her claim).  Walgreens is not required to defend "a remote managerial decision," especially as in this case where alleged adverse decisions may have occurred in the mid-1980s. Roberts v. Gadsden Mem'l Hosp., 835 F.2d 793, 800 (11th Cir. 1988); see also Complaint ¶¶ 53-60, 101-106, 117-22.

## C.    Plaintiffs Cannot Piggy-Back onto a Fatally Defective EEOC Charge [9]

As indicated above, all of the plaintiffs rely on the EEOC charge filed by Ms. Williams.  See discussion supra Part VI.B.  This process, known as "[t]he single-filing rule (or 'piggybacking rule')[,] provides that under some circumstances, a complainant who did not file an EEOC charge may opt into a class action by 'piggybacking' onto a timely charge filed by one of the named plaintiffs in the class action."  Hipp v. Liberty Nat'l Life Ins. Co., 973 F. Supp. 1033, 1037 (M.D. Fla. 1997). A plaintiff "who has filed an EEOC charge may invoke the single-filing rule, provided

---

[9] Plaintiffs have not alleged any facts to support equitable tolling.  See Zipes v. Trans World Airlines, Inc. 455 U.S. 385 (1982) Even if equitable tolling were averred, plaintiffs would encounter the same problem that Ms. Williams was aware that she was allegedly discriminated against well before the 180-day filing limitation.  See Sturniolo v. Sheaffer Eaton, Inc., 15 F.3d 1023, 1025 (11th Cir. 1994) (the timeliness of a discrimination claim is measured from the time the claimant knows or reasonably should know that he or she has been discriminated against).

(1) the relied upon charge is not invalid, and (2) the individual claims of the filing and non-filing plaintiff arise out of similar discriminatory treatment in the same time." Id. (citing Calloway v. Partners Nat'l Health Plans, 986 F.2d 446, 450 (11th Cir. 1993)).

As detailed above, plaintiffs cannot piggy-back onto the FCRA claim because each of the three charges are fatally defective. See discussion supra Part V. With regard to the federal claims, as detailed above, Ms. Williams was well-aware of alleged discriminatory acts as far back as 1994, which was beyond the 180-day filing period. Thus, her charge is invalid and not allowable for piggy-backing purposes.

Although courts have defined the temporal scope of the class to include someone other than a named plaintiff, plaintiffs may not rely on this approach either because the EEOC and Walgreens would not have reasonably been notified of the imminent class complaint nor the existence of any of these plaintiffs from Ms. Williams' charge. See Hipp, 973 F. Supp. at 1037; see also Grayson v. K Mart Corp., 79 F.3d 1100, 1104-1105 (11th Cir. 1996). Nothing in the three EEOC charges indicate a potential class action. See Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992) (the requirement that the scope of the EEOC charge limit the scope of the subsequent complaint gives the employer some warning of the conduct about which the employee is aggrieved and affords the agency and the employer an opportunity to attempt conciliation without resort to the courts).

In fact, on two occasions, Ms. Williams specifically declined to pursue a class action. See Complaint Exhibits C and D. Even if one were to ignore the statement declining pursuit of a class

17

action,[10] a class action spanning the entire state "could [not] reasonably be expected to grow out of the investigation of the pending EEOC charges" as alleged in the rest of the charge. Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n.8 (11th Cir.), cert. denied, 115 S. Ct. 298 (1994).

Under the second element of the single-filing rule, plaintiffs fail as well. The filing and non-filing plaintiffs claims arise out of different alleged discriminatory treatment (i.e., age, retaliation, constructive discharge, disparate impact, and disparate treatment) that, as alleged, possibly spans eighteen years and certainly includes different supervisors, stores, and districts.

### D.    Plaintiffs Discrete and Distinct Claims Do Not Establish a Continuing Violation

The only other possible avenue to revive plaintiffs' time-barred claims is under the doctrine of continuing violation. See Roberts, 835 F.2d at 800. To determine whether there exists a substantial nexus between a time-barred claim and a timely-filed claim to revive their claims under this doctrine, courts consider (1) whether the claims are related in subject matter and frequency and (2) whether the alleged violations were permanent in the sense that they served to trigger the employee's awareness that her civil rights had been violated. See id. at 800-801.

Walgreens does not dispute that the allegations, in a broad sense, touch upon the same subject matter. Walgreens, however, vigorously disputes the frequency requirement because only a few specific allegations are provided, and these few alleged incidents as to each plaintiff are discrete and therefore do not qualify as a discriminatory practice or policy amounting to a continuing violation. See Dudley, 989 F. Supp. at 1199 (a two year break and then a one year lapse between discriminatory incidents did not satisfy the frequency element); see also Roberts, 835 F.2d at 796 (Black hospital

---

[10] Notably, this section of the charge is not included on the third EEOC charge. See Complaint Exhibit E. This charge skips § IX, which would indicate whether or not Ms. Williams wished to pursue a class action.

employee who turned down a promotion because there was no wage increase and then was not later considered for a promotion did not constitute a continuing violation because mere commonality is not enough); Garvey v. Dickinson College, 775 F. Supp. 788, 801 (M.D. Pa. 1991) (four isolated sexual harassment incidents within a two year period not frequent enough).

If plaintiffs could establish frequency, this court should still dismiss the Complaint because a claim "arising out of an injury which is 'continuing' only because a punitive plaintiff knowingly fails to seek relief is exactly the sort of claim that Congress intended to bar by the limitation period." Roberts, 835 F.2d at 801; see also discussion supra Part VI.A.; Burger v. City of Daytona Beach, 1996 WL 673144, at *7 (M.D. Fla. Oct. 9, 1996) (the present effects of past discrimination are not independently actionable violations and are insufficient to sustain a continuing violation theory of discrimination).

19

## CONCLUSION

Pursuant to the Rules of Civil Procedure and as a matter of law, this Court should dismiss the Complaint in its entirety because plaintiffs: (1) indiscriminately incorporate every allegation into each count of their Complaint thus constituting an improper "shotgun pleading;" (2) fail to meet the heightened pleadings and notice requirements for civil rights cases and class actions; and (3) improperly commingle causes of action in violation of Fed. R. Civ. P. 10(b). Additionally, this Court should: (1) dismiss the ADEA claim because ADEA claims are not allowed under Fed. R. Civ. P. 23; (2) dismiss the retaliation and constructive discharge claims for failure to plead a cause of action under Fed. R. Civ. P. 10(b) and 12(b)(6); and (3) dismiss the FCRA claim because plaintiffs failed to exhaust their administrative remedies. Finally, this Court should dismiss all claims as untimely or in the alternative strike several of the plaintiffs and many of the allegations as not falling within the actionable time period.

Respectfully submitted,

STEEL HECTOR & DAVIS LLP
Attorneys for Defendant
200 South Biscayne Blvd., 40th Floor
Miami, Florida 33131-2398
Telephone: (305) 577-2871
Facsimile: (305) 577-7001

By: _____
Mark R. Cheskin, P.A.
Florida Bar No. 708402
Danielle G. Bowser
Florida Bar No. 164143
Brian L. Lerner
Florida Bar No. 177202

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served upon Wendell

T. Locke, Esq. and Patricia A. Leid, Esq., Thorton, Davis & Murray, P.A., Brickell Bay View Centre,

80 S.W. 8th St., Suite 2900, Miami, FL 33130, this 22nd day of February, 2000.

By: _____

Brian L. Lerner

MIA_1998/564060-1