UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  00-6151-Civ-Ungaro-Benages/Magistrate Judge Brown

JOYCE WILLIAMS, individually;
MICHAEL FERGUSON, individually;
JOSEPH PATRICK MCMULLEN,
individually; DELORES OKONMAH,
individually; BERNICE SHORTER-
MEARES, individually; CONSTANCE
ECHEBIRI, individually; MIA DAWN
TAYLOR, individually; CARMITA
MCMULLEN, individually;



       Plaintiffs,

vs.

WALGREEN COMPANY,

       Defendant.

_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST**
**AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

    Defendant Walgreen Co. ("Walgreens") moves to dismiss plaintiffs' First Amended
Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and S.D. Fla. L.R. 7.1.  The grounds for this motion
and points and authorities in support are set forth in the supporting memorandum of law below.



## <u>TABLE OF CONTENTS</u>

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    Legal Standards for the Single-Filing Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   Plaintiffs' Cannot Rely on the Single-Filing Rule Because the
      Underlying Charge Was Not Timely Filed and Was Defective . . . . . . . . . . . . . . . . . . . . 4

      A.    Plaintiffs' FCRA Claims Are Not Subject to the Single-Filing
            Rule, Are Improperly Filed, and Time-Barred . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            1.    The FCRA Administrative Requirements Are Jurisdictional
                  Prerequisites Not Subject to the Single-Filing Rule . . . . . . . . . . . . . . . . 4

            2.    Plaintiffs Rely on a Patently Defective Charge of
                  Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            3.    Even if Properly Filed, Plaintiffs' FCRA Claims Are
                  Time-Barred . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      B.    Plaintiffs' Title VII Claims Are Not Timely Filed . . . . . . . . . . . . . . . . . . . . . . . . 7

III.  Plaintiffs Cannot Rely on the Single-Filing Rule Because the Individual
      Claims of the Filing and Non-Filing Plaintiffs Are Not Similar . . . . . . . . . . . . . . . . . . 10

      A.    The Alleged Discriminatory Treatment Is Not Similar . . . . . . . . . . . . . . . . . . . . 11

      B.    The Alleged Discriminatory Treatment Did Not Occur
            in the Same Time Frame . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      C.    The Alleged Discriminatory Treatment Did Not Involve the
            Same Decisionmakers, Employees, Stores, Cities, or Even Counties . . . . . . . . . 13

IV.   Even if Plaintiffs Could Rely on the Single-Filing Rule, the Continuing Violation
      Exception Does Not Revive Plaintiffs' Claims Allegedly Occurring 300 Days
      Prior to Williams Filing Her EEOC Charge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      A.    Plaintiffs' Claims Do Not Involve the Same Subject Matter . . . . . . . . . . . . . . . 15

      B.    Plaintiffs' Claims Do Not Meet the Frequency Requirement . . . . . . . . . . . . . . . 16

C      Plaintiffs' Actions Demonstrate They Were on Notice of
Alleged Civil Rights Violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V.    Plaintiffs Cannot State a Cause of Action Pursuant to Section 1981  . . . . . . . . . . . . . . . 18

A.     At-Will Employment Does Not Give Rise to Enforceable
Contracts Under Florida Law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

B.     Even If At-Will Employees Can Sue Under Section 1981,
Plaintiffs' Claims Are Time-Barred . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## INTRODUCTION

On January 29, 1997, Joyce Williams filed a charge of discrimination with the EEOC against her employer, Walgreens. Ms. Williams alleged the following: "**I [Ms. Williams]** have been **denied** an opportunity to apply for **promotion** to the positions of **Store Manger** and **Pharmacy Manager** in the **Tampa Bay Area**" based on (1) **age** and (2) **race** from **March 29, 1996, through January 29, 1997**. First Amended Complaint at Exhibit C (emphasis added). Ms. Williams amended this charge seven days later by adding a statement that she "believed that Black employees as a class have been discriminated against in regards to promotions." First Amended Complaint at Exhibit D.

Over two years later, Ms. Williams filed another charge of discrimination. This time, Ms. Williams alleged that she – not Black employees as a class – was discriminated against on the following grounds: "**I** have been **forced to use sick time/days** when I go home while my co-workers are not charged sick time/days when they go home. Additionally, **I** have been **denied** several **promotions** to management positions . . . **in retaliation for filing a previous charge** of discrimination." First Amended Complaint at Exhibit E (emphasis added).

Based on Ms. Williams' EEOC charges, she, along with ten other current and former Walgreens pharmacists (who never filed EEOC charges), filed a class action lawsuit alleging that Walgreens engaged in a long-term systemwide pattern and practice of racial discrimination that affected a large number of black pharmacists.

On April __, 2000, the Court granted plaintiffs' voluntary dismissal of the case as a class action and the voluntary dismissal of three plaintiffs. The eight remaining plaintiffs, individually, have filed a First Amended Complaint for alleged employment discrimination by Walgreens under theories of Title VII disparate treatment, Title VII disparate impact, section 1981 disparate treatment, and for violation of the Florida Civil Rights Act ("FCRA"). Ms. Williams has brought an additional claim for age discrimination. Plaintiffs, more particularly, have brought a litany of alleged discrimination claims occurring in Tampa, Miami-Dade, St. Petersburg, and Broward from 1982 through the present regarding age discrimination, constructive discharge, falsifying disciplinary records, transferring to underperforming stores, assigning undesirable work schedules, and failing to promote to in-store and district-wide positions.

1

The seven other plaintiffs have made the deliberate decision to by-pass the EEOC investigation of their individual charges and to, instead, join forces with Ms. Williams on the strength of her charges. In doing so, the fate of their claims are directly related to the fate of Ms. Williams' claims. Because Ms. Williams' EEOC charges are untimely and defective, this Court should dismiss all of the plaintiffs' Title VII claims and Ms. Williams' age claim.

Even if Ms. Williams and the seven remaining plaintiffs could proceed on these untimely and defective charges of discrimination, this Court should dismiss plaintiffs' Title VII claims because plaintiffs' First Amended Complaint improperly raises sweeping allegations of discrimination spanning twenty years in time and two hundred miles in geography that could not reasonably grow out of an individual's age and race claim regarding denial of promotional opportunities to in-store positions in the Tampa Bay area.

This Court should dismiss Ms. Williams' FCRA claim because she has waited fifteen months past the statutory limit to file her FCRA action. With regard to the seven other plaintiffs, their FCRA claims should be dismissed because the jurisdictional prerequisites of the FCRA mandate that each individual file a charge of discrimination prior to initiating a civil rights action. Even if they could rely on Ms. Williams' charge to avoid filing, plaintiffs' claims would suffer the same fate as their Title VII claims.

Finally, this Court should dismiss plaintiffs' section 1981 claims because their claims are time-barred and/or their at-will employment status does not give rise to a section 1981 claim.

## MEMORANDUM OF LAW

### I.    Legal Standards for the Single-Filing Rule

"If one plaintiff, in a multi-plaintiff, non-class action suit, 'has filed a timely EEOC complaint as to that plaintiff's individual claim, then co-plaintiffs with individual claims arising out of similar discriminatory treatment in the same time frame need not have satisfied the filing requirement.'" Forehand v. Florida State Hosp. at Chattahoochee, 89 F.3d 1562, 1566 n.8 (11th Cir. 1996) (quoting Jackson v. Seaboard Coast Line R.R., 678 F.2d 992, 1011 (11th Cir. 1982)).

This equitable doctrine, known as the single-filing rule, allows a plaintiff to avoid complying with the administrative requirements necessary to bring a civil rights action, which is to file a charge of discrimination with the EEOC, by relying ("piggy-backing") on a plaintiff who has complied with

2

these administrative requirements. A non-filing plaintiff may use this doctrine only if (1) the charge being relied upon was timely and not otherwise defective, and (2) the individual claims of the filing and non-filing plaintiffs arose out of similar discriminatory treatment in the same time frame. See Jackson, 678 F.2d at 1011-12; see also Forehand, 89 F.3d at 1566, n.8.

The Eleventh Circuit has concluded that strict compliance with these two requirements is essential to "ensure[] that no plaintiff be permitted to bring suit until the EEOC has been given the opportunity to address the grievance" (Calloway v. Partners Nat'l Health Plans, 986 F.2d 446, 450 (11th Cir. 1993)) and to avoid non-filing plaintiffs from bootstrapping "the court's jurisdiction to encompass claims regarding practices broader than the . . . claims properly assertable by the named plaintiffs." Griffin v. Dugger, 823 F.2d 1476, 1493 (11th Cir. 1987) (quoting Vuyanich v. Republic Nat'l Bank, 723 F.2d 1195, 1201 (5th Cir.), cert. denied, 469 U.S. 1073 (1984)).

Based on the allegations in plaintiffs' First Amended Complaint, Williams is the only plaintiff who has filed a charge of discrimination with the EEOC. See First Amended Complaint at ¶¶ 27, 32, 71, 78, 100, 107, 131, 138, 158, 165, 194, 201, 221, 228, 250, 257. Because the seven remaining plaintiffs did not file a charge of discrimination, the "entitlement of all other plaintiffs to seek relief rests on the single-filing rule." Forehand v. Florida State Hosp. at Chattahoochee, 839 F. Supp. 807, 819 (N.D. Fla. 1993), aff'd in part and vacated in part on other grounds, 89 F.3d 1562 (11th Cir. 1996); see also First Amended Complaint at ¶¶ 72, 79, 101, 108, 132, 139, 159, 166, 195, 202, 222, 229, 251, 258. By relying on this doctrine, these non-filing plaintiffs "must seek relief within the periphery of the issues that [Williams] has standing to raise and has, in fact raised in her EEOC charge." Forehand, 839 F. Supp. at 818, 819 ("[T]he participation of the single-filing plaintiffs in this lawsuit is limited by the scope of the grievance raised by [the filing plaintiff] in her EEOC complaint."). In other words, as Ms. Williams' claims go, so go the claims of the non-filing plaintiffs.

3

II.    **Plaintiffs' Cannot Rely on the Single-Filing Rule Because the Underlying Charge Was Not Timely Filed and Was Defective**

    A.    **Plaintiffs' FCRA Claims Are Not Subject to the Single-Filing Rule, Are Improperly Filed, and Time-Barred**

        1.    **The FCRA Administrative Requirements Are Jurisdictional Prerequisites Not Subject to the Single-Filing Rule**

Although plaintiffs allege in conclusory fashion that "[a]ll conditions precedent have been met for filing this action and proceeding under the [FCRA]" (see First Amended Complaint at ¶¶ 55, 89, 118, 149, 176, 212, 239, 268), the FCRA requirements are not subject to equitable modification, and as such, plaintiffs' FCRA claims are not subject to the single-filing rule.

In <u>Ayers v. Wal-Mart Stores, Inc.</u>, 941 F. Supp. 1163 (M.D. Fla. 1996), the court rejected the plaintiff's argument that the requirements of the FCRA are conditions precedent subject to equitable modification. In doing so, the court based its holding on the fact that the FCRA and Title VII differ significantly in terms of a complainant's recourse after dismissal. <u>See id.</u> at 1166. The very different result under the two statutes is that, under Title VII, the complainant **may file suit regardless** of whether his or her complaint is dismissed and regardless of whether the EEOC finds reasonable cause. <u>See id.</u> at 1167; <u>see also</u> 42 U.S.C. § 2000e-5.

In contrast, under the FCRA, the complainant **may file suit only** (1) if the complaint is unresolved after 180 days, (2) if the Florida Commission of Human Rights ("FCHR") determines that there is reasonable cause, or (3) if the FCHR finds no reasonable cause and the complainant has requested and completed an administrative hearing. <u>See id.</u>; <u>see also</u> <u>Mulkey v. Equifax Card Servs., Inc.</u> Case No. 94-1080-Civ-T-25E (M.D. Fla. Jan 9, 1996) (a complainant's failure to pursue administrative remedies after a "not reasonable cause" dismissal bars any court action for relief); <u>Beran v. Pizza Hut of Titusville</u>, 1997 WL 842395, *3 (S.D. Fla. Aug. 19, 1997) (rejecting plaintiff's claim because she did not wait 180 days after filing her FCRA charge nor did she wait for a determination by the FCHR).

In this case, the non-filing plaintiffs are using an equitable doctrine – the single-filing rule – to thwart jurisdictional prerequisites. By not filing a charge of discrimination with the FCHR, plaintiffs have improperly "circumvent[ed] the possibility of a dismissal and being locked into the

4

sole remedy of an administrative hearing" or, in the case of a "not reasonable cause" finding, an absolute prohibition to filing a civil rights action. Ayers, 941 F. Supp. at 1167 (holding that the requirements of the FCRA are jurisdictional prerequisites, not conditions precedent subject to equitable modification); see also Ali v. City of Clearwater, 807 F. Supp. 701, 705 (M.D. Fla. 1992) (employee must exhaust the state administrative remedies before bringing an FCRA action).

## 2.    Plaintiffs Rely on a Patently Defective Charge of Discrimination

Even if plaintiffs could, which they plainly cannot do, use the single-filing rule to assert their FCRA claims, plaintiffs' claims must still fail because the underlying charge of discrimination is patently defective. In order to file suit under the FCRA, a plaintiff must first exhaust his or her administrative remedies by filing a charge with the FCHR. See Armstrong v. Lockheed Martin Beryllium Corp., 990 F. Supp. 1395, 1399 (M.D. Fla. 1997). Although Ms. Williams, and for that matter all the other plaintiffs, maintain that they exhausted their FCRA administrative remedies by filing a charge of discrimination with the EEOC (see First Amended Complaint at ¶¶ 55, 89, 118, 149, 176, 212, 239, 268), each of Ms. Williams' three charges fails to meet certain requirements necessary to have an EEOC charge count as being filed with the FCHR. These defects are fatal and warrant dismissal of plaintiffs' FCRA claims.

With regard to Ms. Williams' EEOC charges, she did not check the box requesting dual-filing nor did she specifically designate the FCHR as the appropriate state agency for dual-filing purposes. See First Amended Complaint at Exhibits C, D, and E.[1] These omissions are fatal not because of a technicality, but because without such indications, there is no notice to the employer and the State to initiate an investigation and facilitate conciliation. See, e.g., Chancey, 1997 WL 158312, at *8 (dismissing FCRA claim where the plaintiffs, who did check the dual-filing box, did not fill in the blank indicating that they wanted a copy of their charge filed with the FCHR);

_____

[1] The fact that Ms. Williams expressly designated the FCHR in her most recent 1999 EEOC charge does not salvage plaintiffs' FCRA claims. First, Ms. Williams failed to check the dual-filing box, which is fatal. See Chancey v. Southwest Fla. Water Management Dist., 1997 WL 158312, *8 (M.D. Fla. Mar. 17, 1997). Second, this new or amended charge does not correct the prior deficiencies that existed in Ms. Williams' 1997 EEOC charges. See Haynes v. State of Fla. Dep't of Ins., 1998 WL 271462, *3 (S.D. Fla. Jan. 26, 1998) (holding that filing a charge with the FCHR does not amend an original EEOC charge to allow additional claims).

5

Armstrong, 990 F. Supp. at 1399 (dismissing the plaintiff's FCRA claim because she did not check the box requesting that the EEOC charge be dual-filed); Showers v. City of Bartow, 978 F. Supp. 1464, 1471 (M.D. Fla. 1997) ("Plaintiff, however, does not properly allege that he filed with a state deferral agency, and, therefore, his claim is dismissed on those grounds without having to analyze whether his claim was timely filed.").

### 3.   Even if Properly Filed, Plaintiffs' FCRA Claims Are Time-Barred

Assuming that (1) plaintiffs satisfied the procedural requirements for filing their FCRA claims and (2) they may use the single-filing rule to circumvent filing with the FCHR, the Court still must dismiss plaintiffs' FCRA claims with prejudice because the statute of limitations for filing an FCRA action has lapsed.

The statutory time limit within which an aggrieved person may file a FCRA action is "no later than 1 year after the determination of reasonable cause by the commission." Fla. Stat. § 760.11(5). The one-year limitation begins to run at the end of the 180-day period in which the FCHR has to determine whether reasonable cause exists.[2] See Milano v. Moldmaster, Inc., 703 So. 2d 1093, 1094 (Fla. 4th DCA 1997).

In the present case, plaintiffs allege that Ms. Williams filed her EEOC charge on January 29, 1997, which was subsequently amended on February 5, 1997. Thus, even assuming that the FCRA claim was timely and properly dual-filed, the FCHR was then given 180 days to determine whether reasonable cause existed. See Fla. Stat. § 760.11(3). Using February 5, 1997, as the starting date (which is giving plaintiffs the benefit of the doubt), this 180-day investigative period ended on or about August 4, 1997. Consequently, the one-year period that plaintiffs had to file a civil action began on August 4, 1997, and ended on August 4, 1998. Plaintiffs' Complaint was not filed until January 31, 2000, which was **fifteen (15) months after** the one year filing period had lapsed.

---

[2] Based on the allegations and exhibits in the First Amended Complaint, Walgreens believes that Ms. Williams never received a Notice of Right to Sue from the FCHR. Thus, for statute of limitations purposes, Walgreens must assume as true for the purposes of this Motion only that plaintiffs base their authority to proceed with their FCRA claims on the fact that the FCHR made no determination within 180 days of the filing of Ms. Williams' EEOC charge. See Fla. Stat. § 760.11(8).

6

Clearly, plaintiffs' FCRA claims are time-barred and because "it appears to a certainty that plaintiff[s] are entitled to no relief under any state of the facts," the Court should dismiss these FCRA claims with prejudice. <u>Digiro v. Pall Aeropower Corp.</u>, 19 F. Supp. 2d 1304, 1309-10 (M.D. Fla. 1998) (granting the defendant's Motion to Dismiss with prejudice because the plaintiff's FCRA claim was time-barred); <u>see also</u> <u>Joshua v. City of Gainesville</u>, 1999 WL 71523 (Fla. 1st DCA 1999) (same); <u>Adams v. Wellington Reg'l Med. Ctr., Inc.</u>, 727 So. 2d 1139, 1140 (Fla. 4th DCA 1999) (same); <u>Milano</u>, 703 So. 2d at 1094 (same).

## B.   <u>Plaintiffs' Title VII Claims Are Not Timely Filed</u>

Under Title VII,[3] a claimant may file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment action. <u>See</u> 42 U.S.C. § 2000e-5(e).[4]  This time period commences at the time the adverse decision is made known to the plaintiff, not when the consequences of the decision actually take effect. <u>See</u> <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 258 (1980) (statute of limitations under Title VII began running when the employee found out that his employer decided to terminate his employment, not on the date he received formal notification).

To determine whether the underlying EEOC charge is timely and not otherwise defective, the Court must look to Ms. Williams allegations to determine if she timely-filed her EEOC charge. <u>See</u> <u>Forehand</u>, 839 F. Supp. at 819 (finding that participation of single-filing plaintiffs is limited by the scope of the grievance raised by the filing plaintiff in his or her EEOC complaint).  Using January 29, 1997, as the starting date (which, again, is giving plaintiffs the benefit of the doubt), Ms. Williams' charge would be timely filed only if she first became aware of the alleged discrimination after July 28, 1996.

---

[3] The analysis applied to plaintiffs' Title VII claims is equally applicable to Ms. Williams' age discrimination claim. <u>See</u> <u>Walker v. NationsBank of Fla., N.A.</u>, 53 F.3d 1548, 1555-56 (11th Cir. 1995).

[4] The statute provides an additional 120 days – resulting in 300 days – to file a charge should the complainant dual-file. As illustrated above, Ms. Williams' EEOC charge never was filed with the FCHR thus resulting in the application of the 180-day filing limitation. <u>See</u> discussion <u>supra</u> Part II.A.2.

7

Ms. Williams alleges that Walgreens has a "longstanding systematic policy and pattern or practice of discriminating against Black pharmacists and black employees." First Amended Complaint at ¶¶ 19, 33; see also First Amended Complaint at ¶ 18 ("The denial and abridgments of employment rights and opportunities suffered by PLAINTIFFS . . . are illustrative of the pervasive policy and pattern or practice of race discrimination that has continually existed at WALGREENS."). Ms. Williams confirms this allegedly longstanding pattern and practice by alleging that as far back as her hiring date, which was April 23, 1994 (approximately three years before filing her EEOC charge), "non-Black pharmacists with less years of experience and with equal or less time with WALGREENS were assigned permanent stores" while her requests were ignored. First Amended Complaint at ¶¶ 22, 23, 33, Exhibit E.

Although Ms. Williams now alleges that she "was uncertain at th[at] time as to whether this practice of being passed over was racially-motivated," her allegations and complaint letters reveal that she was well aware of the allegedly discriminatory and adverse nature of these actions. First Amended Complaint at ¶ 22, Exhibit A. First, each time Walgreens allegedly passed over Ms. Williams, she complained to her immediate supervisor Robert Kipp. See First Amended Complaint at ¶ 23. When her discussions with Mr. Kipp went ignored, she proceeded to talk to a higher authority, Kirk Wolfram, the District Manager. See id.; see also First Amended Complaint at Exhibit A.

As a result of her conversation with Mr. Wolfram, Mr. Wolfram directed Mr. Kipp to assign Ms. Williams a permanent store in Tampa. See id. Ms. Williams states that Mr. Kipp "reluctantly assigned" her a permanent store on the condition that she work the midnight shift. See id. Ms. Williams alleges that she should not have had to take the midnight shift because there were "non-Black pharmacists with equal or less time" who were not working the midnight shift. See id. Ms. Williams decision to complain to her immediate supervisors and then to bypass these persons to complain to higher authorities reveals an awareness by Ms. Williams that her civil rights allegedly were being violated. See Matthews v. City of Gulfport, 72 F. Supp. 2d 1328, 1335 (M.D. Fla. 1999) (finding that the plaintiff was sufficiently aware of her civil rights being violated because she kept a notebook documenting episodes that involved harassment and she complained to her supervisors more than once).

8

A second example revealing Ms. Williams awareness of allegedly adverse actions is her allegation that Mr. Kipp was "hostile . . . because of *[Ms. Williams'] race*." First Amended Complaint at ¶ 23 (emphasis added). This alleged racial animosity manifested itself when Mr. Kipp convinced Ms. Williams' Store Manager and Pharmacy Manager to begin creating disciplinary records regarding minute, inconsequential, and insignificant events. See First Amended Complaint at ¶ 24.

Yet another example can be found in Ms. Williams' charge. She alleged that she was discriminated based on her race and age as far back as March 29, 1996, which was well before the 180-day period that began on July 28, 1996. See id. at Exhibit C and D. Ms. Williams' own statement establishes that she was aware of alleged adverse actions.

Based on Ms. Williams' allegations and exhibits in the First Amended Complaint, allegedly adverse decisions were made and communicated to Ms. Williams as far back as 1994 (and certainly by March 29, 1996). Having not filed an EEOC charge within 180 days of these alleged discriminatory actions, Ms. Williams' claims are untimely. See Pearson v. Macon-Bibb County Hosp. Auth., 952 F.2d 1274, 1279 (11th Cir. 1992) (the discrimination claim accrued as soon as the employer told the plaintiff of its plans to terminate, transfer, or force the resignation of the plaintiff, and not three months later, when the plaintiff was actually terminated); see also Hargett v. Valley Fed. Sav. Bank, 60 F.3d 754, 764 (11th Cir. 1995) (lay off that took place on November 15, 1990, was time-barred because the plaintiff did not file an EEOC charge until November 15, 1991); Burnam v. Amoco Container Co., 755 F.2d 893, 894 (11th Cir. 1985) (per curiam) (termination that took place October 9, 1982, was time-barred because the plaintiff filed his EEOC charge on June 6, 1983); Farmer v. City of Fort Lauderdale, 814 F. Supp. 1101, 1102-1103 (S.D. Fla. 1993) (action accrued on date officer received notice of termination, although notice was oral and subsequent negotiations about alternative employment took place).

Because Ms. Williams' claims were not timely filed, the remaining plaintiffs' Title VII claims, which rely on a defective EEOC charge, must be dismissed. See discussion supra Part I; see

9

also <u>Allen v. United States Steel Corp.</u>, 665 F.2d 689, 689-90 (5th Cir. Unit B 1982) (finding that untimely original charge could not support similar claims).[5]

**III.    Plaintiffs Cannot Rely on the Single-Filing Rule Because the Individual Claims of the Filing and Non-Filing Plaintiffs Are Not Similar**

Should the Court find that Ms. Williams timely filed her EEOC charge and her charge of discrimination was not defective, plaintiffs, notwithstanding, cannot meet the second requirement of the single-filing rule because the alleged discriminatory treatment regarding these eight individual plaintiffs was not similar and not within the same time frame. See <u>Erickson v. Hunter</u>, 932 F. Supp. 1380, 1384 (M.D. Fla. 1996).

To determine whether the claims of filing and non-filing plaintiffs arise out of similar discriminatory treatment, the rule in this circuit provides that "the allegations in a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to the allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission." <u>Evans v. U.S. Pipe & Foundry Co.</u>, 696 F.2d 925, 928 (11th Cir. 1983) (quoting <u>Sanchez v. Standard Brands, Inc.</u>, 431 F.2d 455, 466 (5th Cir. 1970)). "The starting point for determining the permissible scope of the judicial complaint is the EEOC charge and investigation." <u>Id.</u> at 929.

Clearly, the courts do not envision non-filing plaintiffs meeting the second prong of the single-filing rule simply because there is mere commonality.

*Although both employment practices could have been racially discriminatory, that alone is not enough to implicate the second requirement of the single-filing rule. Otherwise, 'intervention [could] bootstrap the court's jurisdiction to encompass*

---

[5] The continuing violation exception is not applicable to this argument. As detailed below, this doctrine focuses on extending the liability of the employer to cover alleged acts of discrimination that occurred more 300 days prior to the filing of a timely charge. <u>See</u> discussion <u>infra</u> Part IV. In contrast, the argument in this section focuses on whether Ms. Williams filed her charge within 180 days of time she knew her civil rights were allegedly being violated. Thus, the difference in these two arguments is perspective. The continuing violation looks back in time from the point of a claim that was timely filed while the argument in this section looks forward in time from the point of an alleged discriminatory action that provided notice to the complainant that he or she should file a charge of discrimination.

> *claims regarding practices broader than the . . . claims properly assertable by the*
> *named plaintiffs.'"*

Griffin, 823 F.2d at 1493 (quoting Vuyanich, 723 F.2d at 1201) (emphasis added).

The bootstrapping that the Griffin court feared is precisely what plaintiffs are attempting here. The non-filing plaintiffs offer a litany of vastly different alleged discriminatory treatment (i.e., age, retaliation, constructive discharge, disparate impact, and disparate treatment) occurring over the span of twenty years in Tampa, Miami-Dade, St. Petersburg, and Broward that warrant dismissal of the First Amended Complaint.

### A.    The Alleged Discriminatory Treatment Is Not Similar

As detailed above, relying on the single filing rule means that the non-filing plaintiffs "must seek relief within the periphery of the issues that [Williams] has standing to raise and has, in fact raised in her EEOC charge." Forehand, 839 F. Supp. at 818. Ms. Williams' 1997 charges allege the following: "*I [Ms. Williams]* have been denied an opportunity to apply for promotion to the positions of Store Manger and Pharmacy Manager in the Tampa Bay Area" based on age and race from March 29, 1996, through January 29, 1997. First Amended Complaint at Exhibits C and D (emphasis added).

Ms. Williams' statement includes none the allegations raised by the non-filing plaintiffs. For example, two of the plaintiffs appear to allege constructive discharge. See First Amended Complaint at ¶¶ 90, 94, 240, 244; see also Lockett v. Wal-Mart Stores Inc., 2000 WL 284295, *3 (S.D. Ala. Mar. 8, 2000)("[A] failure to promote claim is not the same type of discriminatory employment action as a termination."). Four of the eight plaintiffs maintain that Walgreens allegedly created false disciplinary records or disciplined the plaintiff for "minute, inconsequential, and insignificant events." First Amended Complaint at ¶¶ 24, 60, 92, 182, 186; see also Lockett, 2000 WL 284295, at *3 ("[A] written reprimand or a poor evaluation, is unlike a termination claim."). Some plaintiffs allege racial discrimination because they were transferred to underperforming stores while other plaintiffs allege discrimination because they were given less desirable work schedules. Notably, none of these plaintiffs' even allege an age discrimination claim like Ms. Williams. Overall, none of these allegations could reasonably grow out of Ms. Williams' allegations regarding the opportunity to apply for a promotion.

11

Although plaintiffs all bring a failure to promote claim in one form or another, even these claims are different from Ms. Williams' charge. Some of the non-filing plaintiffs' allegations relate to the opportunity to apply for promotion to the position of Pharmacy Supervisor, which is a district-wide position, not in-store positions such as Store Manager and Pharmacy Manager as Ms. Williams' alleges. See First Amended Complaint at ¶ 14.

With regard to Ms. Williams retaliation charge, only three of the non-filing plaintiffs appear to allege retaliatory conduct. See First Amended Complaint at ¶¶ 60, 92, 182, 186. Again, the fact that all eight plaintiffs do not share common claims conveys the vast differences that exist with regard to each plaintiff's case.

Notwithstanding, these plaintiffs may not rely on Ms. Williams' 1999 EEOC charge because of the personal nature of a retaliation charge. Ms. Williams alleged that Walgreens retaliated against *her – not "Black employees as a class"* – "for filing a previous charge of discrimination." First Amended Complaint at Exhibits D and E (emphasis added). Walgreens and the EEOC could not be on notice or reasonably expect a retaliation claim from a plaintiff who never filed an EEOC charge let alone reasonably anticipate retaliation allegations regarding undesirable store transfers and undesirable work schedules in light of Ms. Williams' allegations about being "charged sick time/days." First Amended Complaint at Exhibit E.

**B.    The Alleged Discriminatory Treatment Did Not Occur in the Same Time Frame**

Even if these claims were similar enough to reasonably grow out of Ms. Williams' charges, the time frame of the alleged incidents is not the same. Four of the plaintiffs (Michael Ferguson, Joseph Patrick McMullen, Mia Dawn Taylor, and Carmita McMullen) allege acts of discrimination that occurred before Ms. Williams was even hired by Walgreens. For example, Mr. Ferguson's allegations date back to 1982, Ms. McMullen's allegations date back to 1986, and Ms. Taylor's allegations date back to 1990. These allegations could not reasonably grow out of a charge of discrimination relating to incidents of alleged discrimination that occurred from March 29, 1996, through January 29, 1997. See First Amended Complaint at Exhibits C and D.

12

**C.    The Alleged Discriminatory Treatment Did Not Involve the Same Decisionmakers, Employees, Stores, Cities, or Even Counties**

A comparison of the non-filing plaintiffs allegations and Ms. Williams' EEOC charges reveals another major difference establishing that the non-filing plaintiffs' claims could not reasonably grow out of Ms. Williams' charge. In her 1997 charges, Ms. Williams refers to alleged age discrimination and denial of promotion opportunities in the "**Tampa Bay Area**." First Amended Complaint at Exhibits C and D (emphasis added). Many of the other plaintiffs, however, allege discriminatory acts that occurred at Miami-Dade and Broward county stores. There is no possible way that Ms. Williams' allegation in her original and amended charge provided notice to the EEOC and Walgreens about alleged acts of discrimination over two hundred miles away in Miami-Dade and Broward. See Jones v. Firestone Tire and Rubber Co., Inc., 977 F.2d 527, 534 (11th Cir. 1992) (limiting "standing" for single-filing purposes to "claims regarding promotions, transfers, and demotions relating to Store Manager positions within the Birmingham Market.").

Much like the court found in Forehand, "**[r]eliance on the single filing rule is probably not justified . . . where . . . the similarities in treatment are superficial and the differences in treatment are significant**." 839 F. Supp. at 820 (emphasis added). In Forehand, the amended EEOC charge alleged a pattern and practice of racially discriminatory recruitment, hiring, job assignments, promotions, demotions, terminations, lay-offs, reprimands, seniority and affirmative action programs. See id. Despite the all-encompassing nature of the charge, the court rejected plaintiffs attempt to rely on the single-filing rule because the challenged promotion denials were the products of discrete acts involving different decisionmakers, different employees, different times, different hospital units, and different selection processes. See id.

The case here is vastly more problematic than Forehand thus warranting dismissal. First, plaintiffs' Complaint rather than Ms. Williams' charge raises sweeping allegations of discrimination and because the EEOC charge, not the Complaint, governs the scope of actionable claims, plaintiffs' claims could not reasonably grow out of Ms. Williams' charge. Second, plaintiffs attempt to group claims spanning twenty years in time and two hundred miles in geography whereas the plaintiffs in Forehand tried and failed to group claims in a single hospital. See Forehand, 839 F. Supp. at 820. The spatial and temporal differences here are even worse because of the factual allegations that these

13

eight plaintiffs worked (1) in different stores (2) in different districts (3) at different times (4) holding different positions (5) seeking promotions (6) to different positions which were (7) filled by different decisionmakers using (8) allegedly individual selection processes.

Plaintiffs' attempt to circumvent the statute of limitations and administrative requirements necessary to bring a discrimination lawsuit under federal law warrants dismissal. See Forehand, 839 F. Supp. at 819 (finding that the EEOC charge, which did not allege that the defendants engaged in a discriminatory practice of denying promotions to black employees throughout the hospital, limited actionable claims to those denied promotions in a select unit of the hospital); see also Washington v. Brown & Williamson Tobacco Corp., 756 F. Supp. 1547, 1561 (M.D. Ga. 1991) (finding the single-filing rule applicable because the filing and non-filing plaintiffs were passed over for promotions by the same managers in the same department). To rule otherwise would suggest that any one of Walgreens' 107,000 employees in any of its 2,800 stores could piggy-back on Ms. Williams' EEOC charge as long as they have a claim of racial discrimination. See First Amended Complaint at ¶ 15.

**IV.    Even if Plaintiffs Could Rely on the Single-Filing Rule, the Continuing Violation Exception Does Not Revive Plaintiffs' Claims Allegedly Occurring 300 Days Prior to Williams Filing Her EEOC Charge**

If plaintiffs' Title VII claims and Ms. Williams' age claim survive the above analysis, then the Court should dismiss all allegations in the First Amended Complaint that do not fall within the 300-day period prior to the filing of the EEOC charge because many of the plaintiffs allege adverse decisions occurring in the mid-to-late 1980's/early 1990's. See Dudley v. Metro-Dade County, 989 F. Supp. 1192, 1198 (S.D. Fla. 1997) (Ungaro-Benages, J.) (only those incidents which occurred in or after June 1994, during the 300-day period prior to the filing of the EEOC charge on April 7, 1995, were actionable under Title VII).

When a complainant files a charge of discrimination, the EEOC will limit its investigation to alleged discriminatory actions occurring 300-days prior to the complainant filing his or her charge because an employer should not be required to defend "a remote managerial decision." Roberts v. Gadsden Mem'l Hosp., 835 F.2d 793, 800 (11th Cir. 1988); see also 42 U.S.C. § 2000e-5(e)(1).

STEEL HECTOR & DAVIS LLP

In this case, Ms. Williams first filed her EEOC charge on January 29, 1997; consequently, the actionable period extends back 300 days to April 5, 1996. Thus, any claims occurring prior to this date are not actionable and should be dismissed. See Griffin v. Air Prod. & Chem., Inc., 883 F.2d 940, 945 (11th Cir. 1989) (conduct prior to the 300-day Title VII period was not actionable); see also Weaver v. Florida Power & Light, 1996 WL 479117, at *9 (S.D. Fla. July 16, 1996), aff'd, 124 F.3d 221 (11th Cir. 1997) (the plaintiff could not include claims of sexual harassment that occurred sometime in 1993 because she first filed a charge with the FCHR on August 28, 1995, and only acts occurring between August 28, 1994, and August 28, 1995, could form part of her claim).

Plaintiffs plainly acknowledge that many of their claims fall outside of the 300-day period. See First Amended Complaint at ¶¶ 72, 79, 101, 108, 132, 139, 159, 166, 195, 202, 222, 229, 251, 258. In doing so, plaintiffs allege that these barred claims should be deemed timely filed based on the continuing violation exception. See id. In order to determine whether these otherwise barred claims may be revived, courts consider whether the claims are related in subject matter and frequency and whether the alleged violations were permanent in the sense that they served to trigger the employee's awareness that her civil rights had been violated. See Roberts, 835 F.2d at 800-801; see also Robinson v. Caulkins Indiatown Citrus Co., 701 F. Supp. 208, 211 (S.D. Fla. 1988).

While this exception may revive an untimely claim, the Roberts court cautioned that the "continuing violation doctrine does not exist to give a second chance to an employee who allowed a legitimate Title VII claim to lapse." Id. at 800.

## A.   Plaintiffs' Claims Do Not Involve the Same Subject Matter

With regard to subject matter element, while all eight plaintiffs, in the broadest sense, allege racial discrimination, the policies and practices or patterns that each plaintiff complains of varies significantly. Some plaintiffs allegedly were denied promotional opportunities to Pharmacy Manager, some allegedly were denied promotional opportunities to Store Manager, and still others allegedly were denied promotional opportunities to Pharmacy Supervisor. See First Amended Complaint at ¶ 4.

Two plaintiffs allege constructive discharge. See First Amended Complaint at ¶¶ 90, 94, 240, 244; see also Lockett, 2000 WL 284295, at *3 ("[A] failure to promote claim is not the same type of discriminatory employment action as a termination."). Four plaintiffs maintain that Walgreens

15

allegedly created false disciplinary records or disciplined the plaintiff for "minute, inconsequential, and insignificant events." First Amended Complaint at ¶¶ 24, 60, 92, 182, 186; Lockett, 2000 WL 284295, at *3 ("[A] written reprimand or a poor evaluation, is unlike a termination claim.").

Some plaintiffs allegedly were transferred to underperforming stores while other plaintiffs were allegedly given less desirable work schedules. Finally, one plaintiff alleges an age discrimination claim. See Robinson, 701 F. Supp. at 211 (holding that a claim of sexual assault and harassment by a white supervisor and a claim alleging disparate wages as a result of race did not entail the same subject matter discrimination so as to invoke the continuing violation doctrine). This cursory overview underscores the wide variety of subject matter covered by plaintiffs' claims.

Even if the court considered the fact that plaintiffs all maintain a failure to promote claim, this mere commonality is not enough to establish a continuing violation because, as detailed above, the promotions involved vastly different jobs governed by different standards and qualifications filled by different decisionmakers. See Roberts, 835 F.2d at 800 (holding in a failure to promote case that "mere commonality of effect is not sufficient to invoke the continuing violation doctrine"); see also Coon v. Georgia Pacific Corp., 829 F.2d 1563, 1570 (11th Cir. 1987) (rejecting a plaintiff's assertion of a continuing violation in the context of a denial of promotion claim); see also Forehand, 839 F. Supp. at 813 (same).

**B.      Plaintiffs' Claims Do Not Meet the Frequency Requirement**

Assuming for purposes of this Motion that plaintiffs somehow could establish similar subject matter, plaintiffs still could not meet the frequency requirement because the alleged incidents as to each plaintiff are discrete and therefore do not qualify as a discriminatory practice or policy amounting to a continuing violation. See Dudley, 989 F. Supp. at 1199 ("Because there were lengthy gaps between incidents (a two year break and then a one year lapse), the frequency element of the continuing violation exception is not satisfied." (parentheses in original)); see also Roberts, 835 F.2d at 796, 800 (two incidents involving a failure to promote not sufficient to establish a substantial nexus); Garvey v. Dickinson College, 775 F. Supp. 788, 801 (M.D. Pa. 1991) (four isolated sexual harassment incidents within a two year period not frequent enough).

**C      Plaintiffs' Actions Demonstrate They Were on Notice of Alleged Civil Rights Violations**

Finally, "the most important consideration in determining the existence of a substantial nexus is whether the violations were sufficiently permanent to the extent that they should have placed the employee on notice that her civil rights had been violated," which is the case here. Dudley, 989 F. Supp. at 1199; see also Roberts, 835 F.2d at 801; Robinson, 701 F. Supp. at 211. The allegations and exhibits in the First Amended Complaint, which Walgreens must assume as true for purposes of this Motion, reveal that the alleged incidents were of sufficient permanence.

For example, Ms. Williams allegedly was passed over for promotions, denied full-time positions, transferred to different stores, and asked to work midnight shifts. Ms. Williams decided to complain to her immediate supervisors and then decided to bypass these persons to complain to higher authorities. See First Amended Complaint at ¶ 23, Exhibit A. These actions reveal Ms. Williams' awareness of her rights such that she was placed on notice. See Dudley, 989 F. Supp. at 1199 (employee who recognized harassment after a few weeks and failed to report the conduct for ten years was barred from using the continuing violation theory to assert claims prior to the 300-day period); Matthews, 72 F. Supp. 2d at 1335 (finding that the plaintiff failed to meet the third factor of the continuing violation doctrine because she kept a notebook documenting harassment and she complained to her supervisors more than once); Johnson v. Woodruff, 28 F. Supp. 2d 1248, 1251 (finding that the plaintiff failed to meet the third factor of the continuing violation doctrine because the plaintiff complained each time that he was denied a promotion and alleged that his employer should have done more to investigate his complaints).

As detailed more fully above and as established by Ms. Williams' own allegations and numerous exhibits, she was well aware of her rights but failed to take action until many years later. This Court should dismiss the First Amended Complaint because a claim "arising out of an injury which is 'continuing' only because a punitive plaintiff knowingly fails to seek relief is exactly the sort of claim that Congress intended to bar by the limitation period." Roberts, 835 F.2d at 801; see also Burger v. City of Daytona Beach, 1996 WL 673144, at *7 (M.D. Fla. Oct. 9, 1996) (the present effects of past discrimination are not independently actionable violations and are insufficient to sustain a continuing violation theory of discrimination).

17

**V.    Plaintiffs Cannot State a Cause of Action Pursuant to Section 1981**

    **A.    At-Will Employment Does Not Give Rise to Enforceable Contracts Under Florida Law**

The phrase, "make and enforce contracts," as defined by section 1981, includes "the making, performance, modification, and termination of contracts, and the enjoyment of benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b). A plaintiff proceeding under section 1981 must prove intentional discrimination interfering with these contractual rights. See Brown v. American Honda Motor Co., Inc., 939 F.2d 946, 949 (11th Cir. 1991), cert. denied, 502 U.S. 1058 (1992); Vincent v. Wells Fargo Guard Servs., Inc. of Fla., 3 F. Supp. 2d 1405, 1413 (S.D. Fla. 1998).

    Plaintiffs do not allege that they had an employment contract with Walgreens for a definite period of time. "Without an employment contract specifically obligating both the employer and the employee for a definite term of employment, the employment is considered to be indefinite and terminable at the will of either party. No action may be maintained for breach of the employment contract under these circumstances." Maguire v. American Family Life Assurance Co. of Columbus, Ga., 442 So. 2d 321, 323 (Fla. 3d DCA 1983).

    Because plaintiffs are at-will employees, they cannot prevail under section 1981 for the simple fact that no employment contract existed. See Gonzalez v. Ingersoll Milling Mach. Co., 133 F.3d 1025, 1033-35 (7th Cir. 1998) (stating that "[b]y its terms, § 1981 governs contractual relationships . . . and, in order to bring a § 1981 claim, there must at least be a contract"); see also Jones v. Becker Group of O'Fallon Div., 38 F. Supp. 2d 793, 796 (E.D. Mo. 1999) (finding that at-will employee's absence of a contractual relationship is cause to dismiss section 1981 claim); Blumenthal v. Murray, 995 F. Supp. 831 (N.D. Ill. 1998) (failure to plead factual existence of contract is fatal to section 1981 claim); Moscowitz v. Brown, 850 F. Supp. 1185, 1189 (S.D. N.Y. 1994) (at-will employee failed to state a section 1981 claim because there was no employment contract).

    Two district courts within the Eleventh Circuit, Copley v. BAX Global, Inc., 80 F. Supp. 2d 1342 (S.D. Fla. 2000), and Farrior v. H.J. Russell & Co., 45 F. Supp. 2d 1358, 1365 (N.D. Ga.

STEEL HECTOR & DAVIS LLP

1999), have weighed in whether an at-will employee may proceed under a section 1981 claim. The
Copley court, in reaching its decision, stated:

> "[t]he Eleventh Circuit has yet to address this issue directly. But all of the circuit
> courts that have squarely addressed the issue have determined that an at-will
> employee may bring a cause of action under § 1981, at least where at-will
> employment is recognized as a contractual relationship under the law of the state
> where the employment occurred."

Copley, 80 F. Supp. 2d at 1345-46 (emphasis added). Based on this premise, the Copley and Farrior
courts found that a section 1981 claim was available. See Farrior, 45 F. Supp. 2d at 1365 (according
to Georgia law, "even though a person's employment contract is at will he has a valuable contract
right" (citing Troy v. Interfinancial, Inc., 320 S.E. 2d 872 (1984))); see also Copley, 80 F. Supp. 2d
at 1346 (finding that the plaintiff may proceed under section 1981 because "Florida law recognizes
at-will employment as a contractual relationship of some form").

Respectfully, the Copley court reached its decision contrary to Florida law. Florida law
provides that an employee whose employment is terminable at will does not have a contractual
relationship with his employer. See Smith v. Piezo Tech. and Prof'l Adm'rs, 427 So. 2d 182, 184
(Fla. 1983) ("'[W]here the term of employment is discretionary with either party or indefinite, then
either party for any reason may terminate it at any time and no action may be maintained for breach
of the employment contract.'" (DeMarco v. Publix Super Markets, Inc., 384 So. 2d 1253, 1254 (Fla.
1980) (quoting DeMarco v. Publix Super Markets, Inc., 360 So. 2d 134, 136 (Fla. 3d DCA 1978),
aff'd, 384 So. 2d 1253 (Fla. 1980)))); see also McGregor v. Board of Comm'rs, 674 F. Supp. 858,
860 (S.D. Fla. 1987), aff'd, 956 F.2d 1017 (11th Cir. 1992) (per curiam) ("an at-will employee . .
. possesses no property interest in his continued employment." (citing Smith, 427 So. 2d at 184));
Spanish Broad. Sys. of Fla., Inc. v. Alfonso, 689 So. 2d 1092, 1094 (Fla. 3d DCA 1997); Linafelt
v. Bev, Inc., 662 So.2d 986, 989 (Fla. 1st DCA 1995) ("An employee may be terminated at will,
without a showing of cause, where the employment contract between the parties is indefinite as to
the period of employment.").

19

**B.     Even If At-Will Employees Can Sue Under Section 1981, Plaintiffs' Claims Are Time-Barred**

Even if an at-will employee could maintain a section 1981 claim, six of the plaintiffs (Joyce Williams, Michael Ferguson, Joseph Patrick McMullen, Constance Echebiri, Mia Dawn Taylor, and Carmita McMullen) cannot state a cause under section 1981 because they did not file their claims within the applicable time period. The Eleventh Circuit has determined that section 1981 claims are governed by Florida's four year statute of limitations. See Baker v. Western Indus., Inc., 850 F.2d 1480, 1483 (11th Cir. 1988); see also Fla. Stat. § 95.11(3).

By not filing suit within four years of the date of the discriminatory acts, Joyce Williams, Michael Ferguson, Joseph Patrick McMullen, Constance Echebiri, Mia Dawn Taylor, and Carmita McMullen allowed the statute of limitations to lapse and thus are time-barred from bringing their section 1981 claims. See Russell v. American Eagle Airlines, Inc., 46 F. Supp. 2d 1330, 1334 (S.D. Fla. 1999) (finding that a demotion that occurred in December 1993, was time-barred under section 1981 because the Complaint was not filed until February 1998); see also Hull v. Case Corp., 1993 WL 603554, *4 (S.D. Fla. 1993) (finding that the discriminatory reassignment of territory that occurred in January 1989, was time-barred because the Complaint was not filed until June 1993).

## CONCLUSION

For all these reasons, this Court should dismiss the First Amended Complaint.

Respectfully submitted,

STEEL HECTOR & DAVIS LLP
Attorneys for Defendant
200 South Biscayne Blvd., 40th Floor
Miami, Florida 33131-2398
Telephone:  (305) 577-2871
Facsimile:  (305) 577-7001

By: _____
         Mark R. Cheskin, P.A.
         Florida Bar No. 708402
         Danielle G. Bowser
         Florida Bar No. 164143
         Brian L. Lerner
         Florida Bar No. 0177202

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S. Mail upon Kelsay D. Patterson, Esq., Law Offices of Michael M. Tobin, P.A., 1099 Ponce De Leon Blvd., Coral Gables, Florida 33134-3319, this 8th day of May, 2000.

By: _____

Brian L. Lerner

MIA_1998/564060-2