UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 00-6151-CIV-UNGARO/Brown

JOYCE WILLIAMS, individually;
MICHAEL FERGUSON, individually;
JOSEPH PATRICK McMULLEN,
individually; DELORES OKONMAH,
individually; BERNICE SHORTER-
MEARES, individually;
CONSTANCE ECHEBIRI, individually;
MIA DAWN TAYLOR, individually;
and CARMITA McMULLEN, individually,

        Plaintiffs,

v.

WALGREEN COMPANY,

        Defendant.
_____/

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiffs, by and through undersigned counsel, hereby file the above entitled pleading and as grounds, states as follows:

1. The Defendant's Motion to Dismiss is an ill conceived masked Summary Judgment Motion. However, unlike a Motion for Summary Judgment, the Defendant asserts countless representations without the benefit of Affidavits, depositions, and/or interrogatory responses. For instance, page twenty (20) of the Defendant's Motion alleges that six (6) of the named Plaintiffs cannot assert

1

claims under Section 1981 as their claims would fall outside of the four (4) year statute of limitations. However, the Amended Complaint alleges discriminatory policies that effected all of the named Plaintiffs within the prescribed four (4) year statute of limitations. Without demonstrating by Affidavits, depositions, or interrogatories that the discriminatory practices complained of by the Plaintiffs fall outside the four (4) year period, the Defendant does nothing more than assert unsubstantiated, unsupported, bald face allegations before any discovery has taken place.

Because the Defendant's entire Motion continues on the same way, going from one (1) topic to another using a shotgun approach to all of the allegations as found in the First Amended Complaint, this Motion is a drain on both the undersigned and the Court.

## JOINDER AND PIGGYBACKING

2. Joyce Williams took her complaints of employment discrimination that had occurred within three hundred (300) days to the Equal Employment Opportunity Commission. After the Commission's investigation, they issued her a Right to Sue letter because her grievances could not be resolved with the Defendant. The seven (7) other named Plaintiffs, whose complaints and grievances are parallel if not identical to Ms. Williams have joined into the lawsuit using Ms. Williams' Right to Sue letter as their vehicle to piggyback upon for their administrative standing. Rather than continue on with frivolous unsupported allegations wherein case law is partially and incorrectly

paraphrased, as done by the Defendant, attached as **Exhibit A** is the case of <u>Wu v. Thomas,</u> 863 F. 2d 1543 (11th Cir. 1989). A sixth (6th) grader with an average ability of reading comprehension could easily read the <u>Wu</u> case and understand that if the initial charging party obtains a Right to Sue letter and is unable to reconcile his/her grievances with the employer, persons similar to the charging party do not have to file EEOC charges because it is apparent that reconciliation is unlikely. For the Defendant to know that such a case remarkably on point exists yet still file this Motion at bar begs this Honorable Court to impose some kind of equitable remedy.

## NEXUS AND JOINDER

3. Not only does case law permit the aforementioned Title 7 administrative joinder under a single Right to Sue letter, but Rule 20 of the Civil Rules of Procedure encourages it in this situation. Rule 20 reads as follows:

> *Permissive Joinder. All persons may join in one (1) action as Plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions, occurrences and if any questions of law or fact common to all of these persons will arise in the action.*

For the Defendant to assert that the Plaintiffs do not share many of the same common facts, questions of law, transaction, occurrences, and other matters similar to their claims is to believe that neither the Complaint nor the First Amended Complaint ever received a reading. A greater waste of time would be a review of all of the allegations and complaints as found in both Complaints that demonstrate the nexus of facts that all of the Plaintiffs share. They all have

worked as pharmacists for the Defendant. They all are black and therefore part of a federally protected class. They all allege having been passed over for promotions to management by less qualified non-black peers. They all work in the Florida Market area. They were all governed by the same polices and practices of the Defendant. All of their grievances and complaints occurred within the past four (4) years. None of them have ever been offered an interview for the position of Pharmacy Supervisor. Moreover, additional authority for the Joinder and inclusion of all the Plaintiffs in this lawsuit can be found under Federal Rules of Civil Procedure 19: Joinder of persons needed for just judication. According to Rule 19,

> *A person who is subject to the service of process and whose joinder will not deprive the Court of jurisdiction over the subject matter of the action shall be joined as a party in the actions if in the person's absence complete relief cannot be accorded among those already parties or the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may as a practical matter impair or impede the person's ability to protect that interest.*

Any cursory reading of the two (2) aforementioned rules in conjunction and/or combination with case law should demonstrate that the Defendant's twenty (20) page Motion is frivolous. The Court should assert itself at this early stage to curtail a host of frivolous Motions that the Defendant is certainly going to continue to file. For this Court to take the time to read such frivolous pleadings and respond to them, is relatively small in comparison to the amount of time it takes for the undersigned to address such matters.

## AT WILL

4. The 11th Circuit has never held that an employer can discriminate when the employment contract is consummated in an "at will" state. Neither the Southern District of Florida nor the 11th Circuit have ever reached the conclusion that discrimination can properly take place in the employment environment in the context of at will employment. To the contrary, on its face, the statutory language of 1981 plainly reveals that it is intended to eliminate employment discrimination from all employment contracts whether it deals with the making, enforcement, or the terms and conditions of the employment. The Plaintiffs agreed to provide and perform pharmaceutical services for the Defendant for pay in an environment free of employment discrimination. To this end, the Defendant is in violation of Section 1981.

WHEREFORE the Plaintiffs request that the Defendant's Motion to Dismiss be denied, and that this Honorable Court consider granting some kind of equitable remedy due to this Motion having been frivolously filed in bad faith.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 16th day of May, 2000, to: MARK R. CHESKINS, ESQ., Steel Hector & Davis LLP, Attorneys for Defendant, 200 South Biscayne Blvd., 40th Floor, Miami, Florida 33131-2398.

**MICHAEL M. TOBIN, P.A.**
Attorneys for Plaintiffs
1099 Ponce De Leon Blvd.
Coral Gables, Florida 33134-3319
Tel:   305-445-5475
Fax;   305-445-5479

*[signature]*
Kelsay D. Patterson
Fla. Bar No. 119784

5TH CASE of Level 1 printed in FULL format.

Dr. Kathleen Johnson WU and Dr. Hsiu Kwang Wu, Plaintiffs-Appellants v. Dr. Joab THOMAS, in his official capacity as President of the University of Alabama; The Board of Trustees of the University of Alabama, a body corporate; Dr. Roger E. Sayers, individually and in his official capacity as Academic Vice-President of the University of Alabama; Dr. Richard Peck, individually and in his official capacity as Dean of the College of Arts & Sciences of the University of Alabama; Dr. Max Hocutt, individually and in his official capacity as chairperson of the Department of Philosophy of the University of Alabama; and Dr. John Formby, individually and in his official capacity as head of the Department of Finance, Economics, and Legal Studies of the University of Alabama, Defendants-Appellees

No. 87-7653

UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

863 F.2d 1543; 1989 U.S. App. LEXIS 539; 52 Fair Empl. Prac. Cas. (BNA) 3; 48 Empl. Prac. Dec. (CCH) P38,622

January 23, 1989

SUBSEQUENT HISTORY: Rehearing En Banc Denied March 8, 1989.

PRIOR HISTORY:
[**1] Appeal from the United States District Court for the Northern District of Alabama.

CORE TERMS: retaliation, unlawful employment practice, Equal Pay Act, settlement, summary judgment, Civil Rights Act, administrative remedies, filing requirement, retaliatory, immunity, cause of action, discriminate, retaliating, requisites, sovereign immunity, judicata, Fourteenth Amendment, appropriate legislation, essentially identical, sex discrimination, similarly situated, reasonable belief, state authority, failed to file, handed down, discriminating, participated, deprivation, litigated, grievance

COUNSEL:

Susan Williams Reeves, Attorney for Appellants.

Stanley Jay Murphy, Tuscaloosa, Alabama, Attorneys for Appellees, C. Glenn Powell.

JUDGES: Tjoflat and Edmondson, Circuit Judges, and Wisdom, * Senior Circuit Judge.

   * Honorable John Minor Wisdom, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

OPINIONBY: TJOFLAT

OPINION: [*1545] TJOFLAT, Circuit Judge.

I.

The appellants in this case, Kathleen and Hsiu Kwang (H.K.) Wu, are employed on the faculty at the University of Alabama. Kathleen Wu is an associate professor in the Department of Philosophy; H.K. Wu is a full professor of Finance and Economics. n1 Both Kathleen and H.K. Wu have tenure.

   n1 Both H.K. and Kathleen Wu have doctorates in their respective fields. To avoid confusion and unnecessary verbiage, this opinion will refer to the appellants as Kathleen and H.K. Wu, or as Mr. and Ms. Wu.

In 1980, Kathleen Wu began to complain that officials at the University of Alabama were discriminating against her because of her gender in matters concerning equal pay and opportunity for promotion. She eventually filed a charge with the United States Equal Employment Opportunity Commission (the EEOC); after exhausting [**2] her administrative remedies with the Commission, Ms. Wu brought an action in the United States District Court for the Northern District of Alabama against several of the university's officials. In that suit (Wu I), Ms. Wu sought relief under the Equal Pay Act of 1963, 29 U.S.C. § 206 (1982), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1982), and under 42 U.S.C. § 1983 (1982). n2

   n2 Kathleen Wu's section 1983 claim was predicated on the university officials' alleged violations

Page 4

863 F.2d 1543, *1545; 1989 U.S. App. LEXIS 539, **2;
52 Fair Empl. Prac. Cas. (BNA) 3; 48 Empl. Prac. Dec. (CCH) P38,622

of the Equal Pay Act, Title VII, and the due process and equal protection clauses of the fourteenth amendment.

According to H.K. Wu, subsequent to Kathleen Wu's filing of her EEOC charge he was summarily removed from the chairmanship of his department without cause, notice, or explanation. In November 1985, Dr. John Formby, the department's new chairman, invited Mr. Wu to look for work somewhere else. As a result of this action, Kathleen Wu filed a second charge with the EEOC on March 12, 1986, contending that Dr. Formby's treatment of her husband was in retaliation for her prosecution of Wu I.

The district court tried Wu I from March 31 to April 9, 1986. In October 1986, the [**3] district court held for the university officials. See Wu v. Thomas, No. 84-2159 (N.D.Ala. Oct. 24, 1986), aff'd *847 F.2d 1480 (11th Cir.1988)*. H.K. and Kathleen Wu allege in the instant case that following the district court's decision, several university officials continued to harass them.

Specifically, H.K. Wu alleges that in August 1986, Dr. Formby again suggested that he look for another job. In addition, Mr. Wu alleges that university officials have denied him various important teaching assignments, removed him without notice from a Graduate Admissions Committee, and have given him pay raises lower than those received by comparable members of his department. These measures, he contends, have diminished his academic reputation, thus denying him opportunities outside the University of Alabama and causing him emotional distress. n3

n3 We take these allegations from the affidavit of H.K. Wu, which was filed with the district court on June 26, 1987, before it made its final disposition in this case. We treat this affidavit as effectively amending Mr. Wu's original complaint.

Kathleen Wu alleges that university officials have destroyed at least one favorable student evaluation [**4] of her performance, have entered inaccurate ratings of her performance on her permanent record, and have publicly threatened her for attempting to investigate this matter. Ms. Wu further alleges that university officials sought to force one of her former students to sign an affidavit implicating Ms. Wu in wrongdoing, and that she has been denied reasonable classroom facilities and compensation for approved professional expenses. University officials also have threatened to remove her from classes she traditionally has taught, have excluded her from vital departmental decisions, have called her a [*1546] "trouble-making woman [who is] essentially dishonest," and have leveled other groundless charges at her. Ms. Wu contends that as a result of these incidents her reputation in the academic community has suffered and she has experienced emotional distress. n4 These incidents led Ms. Wu to file a third retaliation charge with the EEOC.

n4 Again, we take these allegations from the affidavit of Kathleen Wu, which was filed with the district court on June 26, 1987, before the court made its final disposition of this case. We treat this affidavit as effectively amending Ms. Wu's original complaint.

[**5]

On January 21, 1987, the EEOC issued a no cause determination and a right to sue letter on Ms. Wu's second EEOC charge. H.K. and Kathleen Wu then brought this suit, alleging that officials at the University of Alabama, the appellees, had violated *42 U.S.C. § 2000e* (1982) by retaliating against H.K. and Kathleen Wu for bringing Wu I. They sought relief under that statute n5 and under *42 U.S.C. § 1983* (1982). n6

n5 *42 U.S.C. § 2000e-3*(a) (1982) provides that:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Section 2000e-3 clearly authorizes Ms. Wu's suit for any retaliation predicated on her Title VII claims in Wu I. In Wu I, Ms. Wu also alleged violations of the Equal Pay Act of 1963, *29 U.S.C. § 206* (1982). That Act has no retaliation provision. Appellants maintain, however, that they may remedy retaliatory action for the bringing of an Equal Pay Act suit under *42 U.S.C. § 2000e-3*(a). No court apparently has addressed this issue. But cf. *Willner v. Budig, 848 F.2d 1032, 1034 (10th Cir.1988)* (claim for retaliation following Equal Pay Act suit presented but not addressed); *Equal Employment Opportunity Comm'n v. West Co., 40 Fair Emp. Prac.Cas (BNA) 1024, 1025-26 (E.D.Pa. 1986)* (same); *Tuber v. Continental Grain Co., 326 Fair Emp.Prac.Cas. (BNA) 933, 937 (S.D.N.Y. 1984)* (same); *Altman v.*

863 F.2d 1543, *1546; 1989 U.S. App. LEXIS 539, **5;
52 Fair Empl. Prac. Cas. (BNA) 3; 48 Empl. Prac. Dec. (CCH) P38,622

*Stevens Fashion Fabrics, 441 F. Supp. 1318, 1319 (N.D.Cal.1977)* (same).

Section 2000e governs retaliation arising from "any practice made an unlawful employment practice by this section." Title VII provides the following definition of an unlawful employment practice:

It shall be an unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

*42 U.S.C. § 2000e-2*(a)(1) (1982). Thus, by the terms of section 2000e, employers are prohibited from retaliating for any action alleging sex discrimination, whether it was brought under Title VII or another act of Congress. We therefore conclude that the retaliation provisions of section 2000e encompass suits brought to remedy retaliatory action resulting from the prosecution of a claim under the Equal Pay Act.
[**6]

n6 Section 1983 provides a remedy for the deprivation of rights secured by the Constitution and laws of the United States by any person acting under color of state law. In this case, H.K. and Kathleen Wu seek relief under section 1983 for the violation of *42 U.S.C. § 2000e*. See discussion infra at II.C.

In response to the appellants' complaint, the appellees filed an answer, labeled a "motion to dismiss," which denied that anyone connected with the university had retaliated against H.K. and Kathleen Wu, and which raised the affirmative defenses of res judicata, nonexhaustion of administrative remedies, and sovereign immunity. The district court, sua sponte, converted the appellees' answer to a motion for summary judgment, and on October 27, 1987 the court entered a final order granting appellees summary judgment under Fed.R. Civ.P. 56. The appellants now challenge the district court's decision.

II.

The district court advanced four independent grounds for its award of summary judgment. We examine each ground separately.

A.

As its first ground for summary judgment, the district court concluded that the appellants "failed to comply with the jurisdictional prerequisites [**7] to suit pursuant to Title VII of the Civil Rights Act of 1964." Specifically, the district court first determined that Kathleen Wu's suit was barred [*1547] because she had not yet requested or received a right to sue letter for her third EEOC charge. Second, the district court determined that H.K. Wu had no actionable claim because he had made no independent EEOC charge, and because "his suit [could not] rest on [Kathleen Wu's] filed charges with the EEOC."

This circuit has long required plaintiffs to exhaust their administrative remedies before bringing suit under Title VII. See, e.g., *Wheeler v. American Home Prods. Corp., 582 F.2d 891, 897 (5th Cir.1977)* n7 ("It is clear that a single individual plaintiff in a civil action under Title VII must satisfy two jurisdictional requisites: (1) a charge must have been filed with [the] EEOC and (2) the statutory notice must have been received from [the] EEOC.") We have refused, however, to demand such exhaustion in all situations, recognizing that literal compliance does not always effectuate the purpose of the requirement, which is to promote informal settlements. Thus, we have noted that "it would be wasteful, if not vain, for numerous [**8] employees, all with the same grievance, to have to process many identical complaints with the EEOC. If it is impossible to reach a settlement with one discriminatee, what reason would there be to assume the next one would be successful[?]" *Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 498 (5th Cir.1968)*.

n7 In *Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981)* (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit, including Unit A, handed down prior to October 1, 1981.

One such area in which we have recognized that strict compliance with Title VII is unnecessary is where the plaintiff has filed a charge with the EEOC, but in her judicial action the plaintiff raises related issues as to which no filing has been made. Thus, we have stated:

As long as allegations in the judicial complaint and proof are "reasonably related" to charges in the administrative filing and "no material differences" between them exist, the court will entertain them. As we have noted . . ., "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."
[**9]

Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate.

863 F.2d 1543, *1547; 1989 U.S. App. LEXIS 539, **9;
52 Fair Empl. Prac. Cas. (BNA) 3; 48 Empl. Prac. Dec. (CCH) P38,622

Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate.

*Ray v. Freeman, 626 F.2d 439, 443 (5th Cir.1980)* (citation omitted) (quoting *Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir.1970)).*

Kathleen Wu's second EEOC charge, which the district court apparently overlooked, stated as follows:

The University retaliated against me by [Dr. John Formby] calling my husband and suggesting that he would be happier teaching somewhere else. This was retaliation against me because (1) I have a discrimination suit pending against the University; (2) the University knows that if my husband took another job in a different city I would be likely to follow him because of our marital relationship.

We think that the allegations contained in Ms. Wu's complaint in the instant case are reasonably related to this charge, serving only to amplify the claim of retaliation with additional instances of wrongful retaliatory conduct on the part of university officials. Moreover, we question whether requiring [**10] a right to sue letter with regard to the third EEOC charge would serve any purpose -- given the university's reaction to her previous charges, we hardly can expect that it suddenly will decide to avail itself of the good offices of the EEOC and reach an informal settlement with Kathleen and H.K. Wu. We therefore conclude that Ms. Wu's failure to receive a right to sue letter on her third EEOC charge is no obstacle to this suit.

A second situation in which this court has relaxed the filing requirement of Title VII arises when a non-filing party, such as Mr. Wu, wishes to "piggy-back" his judicial action on the claim of a party who followed the administrative requisites [*1548] of the Act. Thus, we have allowed the class in a Title VII action to include similarly situated employees who failed to file EEOC charges. See *Oatis, 398 F.2d at 499.* Likewise, we have held that intervening plaintiffs need not have pursued the administrative requisites of Title VII. See *Wheeler, 582 F.2d at 897-98.* In *Crawford v. United States Steel Corp., 660 F.2d 663 (5th Cir. Unit B Nov. 1981),* n8 this court concluded that the same policies behind the Oatis and Wheeler decisions compelled the same [**11] result in the case of co-plaintiffs who present essentially identical claims of discrimination:

Analysis of the purpose behind the EEOC filing requirement and of the unique history of the litigation out of which this case arises also favors our conclusion. The purpose of the filing requirement is to insure "that the settlement of grievances be first attempted through the office of the EEOC." *Oatis, 398 F.2d at 498.* This purpose is not served in the present case by requiring each of the several plaintiffs to file essentially identical charges. Id. The settlement channels furnished by the filing requirement have been thoroughly exhausted with respect to these plaintiffs. . . . To dismiss the claims of one-third of the plaintiffs in this case because they failed to file EEOC charges is thus not only inconsistent with Wheeler and Oatis but also an unnecessarily harsh penalty for their failure to resort to settlement channels that were already filled with claims substantially [**12] similar to their own.

*Crawford, 660 F.2d at 666.* In allowing the "piggy-backing" of claims, we must look to see whether the plaintiffs are so "similarly situated" that the gravamen of their complaints are the same. See id. Given that Kathleen Wu's charge of retaliation is based on the university's actions toward her husband, this case presents an archetypal example of the situation in which multiple filings are unnecessary. We therefore conclude that H.K. Wu's claim also is properly before the court, despite his failure to file an individual charge with the EEOC. The district court erred in dismissing appellants' claims for nonexhaustion of administrative remedies.

   n8 In *Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir.1982),* this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

B.

As its second basis for granting summary judgment, the district court determined that the Wu's suit was precluded by the court's previous decision in Wu I. In making this determination, the district court relied on a recent statement of the doctrines res judicata and collateral estoppel by this court:

Plaintiff concedes that its present claim could have been included in the prior suit if it had been presented in a timely manner. Since it could have been presented as part of plaintiff's original [complaint] [**13] it must have been so presented or else be barred by res judicata. The rule obtains both in this circuit and in the state courts of Florida that final judgment by a court of competent jurisdiction bars a subsequent suit between the same parties and on the same cause of action not only as to all

Case 0:00-cv-06151-PCH    Document 30    Entered on FLSD Docket 05/17/2000    Page 11 of 12

Page 7
863 F.2d 1543, *1548; 1989 U.S. App. LEXIS 539, **13;
52 Fair Empl. Prac. Cas. (BNA) 3; 48 Empl. Prac. Dec. (CCH) P38,622

matters that were litigated in the first proceeding but also as to all issues that could have been litigated.

*Interstate Pipe Maintenance, Inc. v. FMC Corp.*, 775 F.2d 1495, 1497 (11th Cir.1985). In reviewing the district court's decision, we focus on the requirement that the "same cause of action" be at issue in both suits.

In this case, the district court seems to have believed that the retaliation claims at issue in the present litigation were resolved by Wu I. We can find no basis for this belief. Neither the pleadings nor the pretrial order in Wu I show any indication that Kathleen Wu raised a retaliation claim. Appellees' counsel admitted this in oral argument before us, but maintained that because some of the testimony in Wu I touched on retaliatory actions taken by the university, Kathleen Wu should be deemed [*1549] to have implicitly amended her complaint to include a claim [**14] of retaliation. We find counsel's argument to be completely devoid of merit. Kathleen Wu's first action did not raise a claim of retaliation; the principles of res judicata and collateral estoppel therefore do not bar appellants' claims, and the district court erred in so holding.

C.

Appellants allege in their complaint:

that the defendants have violated the rights of the plaintiffs under [42] U.S.C. § 2000e and *42 U.S.C. § 1983* by unlawfully retaliating against plaintiffs because they have made a civil rights complaint against the defendants and because they have sought to enforce Title VII of the Civil Rights Act of 1964 and the Equal Pay Act of 1963.

The district court concluded that appellants had not "alleged or proved injury to a property or liberty interest protected by the fourteenth amendment" and thus found a third basis for granting summary judgment. This disposition of the claim is entirely unresponsive: appellants' complaint pleads a cause of action under *42 U.S.C. § 2000e*, not the fourteenth amendment. n9

   n9 Appellants did not invoke section 1983 to redress a fourteenth amendment violation. Section 1983 remedies deprivations of rights created by federal law as well as by the Constitution. See *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S. Ct. 2502, 2504, 65 L. Ed. 2d 555 (1980) ("The § 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law."). By pleading section 1983, the appellants only seek the additional remedies that the section affords for the appellees' alleged violation of *42 U.S.C. § 2000e*.

[**15]

Section 2000e-3(a) states that:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

*42 U.S.C. § 2000e-3*(a) (1982). Such a claim does not require that the employer actually have been engaged in an unlawful employment practice; rather, the plaintiff need only have had a "reasonable belief" that an unlawful employment practice was occurring. See *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1137 (5th Cir. Unit A Sept.1981). As applied to the facts of this case, then, it is irrelevant that Kathleen Wu lost her suit for sex discrimination in Wu I, so long as she had a reasonable belief that university officials were discriminating against her on the basis of sex. We conclude that appellants' section 2000e claim states a valid cause of action. The district court erred in concluding otherwise.

D.

This suit was brought against Dr. Joab Thomas, in his official capacity as President [**16] of the University of Alabama; the Board of Trustees of the University of Alabama; and several other university officials, both individually and in their official capacities. The appellants requested declaratory and injunctive relief against the Board of Trustees and the university officials sued in their official capacity. The appellants also requested compensatory damages. As its fourth reason for granting appellees' motion for summary judgment, the district court concluded that "all of the defendants are protected by the eleventh amendment doctrines of sovereign immunity and good faith immunity."

In *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976), the Supreme Court held that Congress has the power to abrogate the states' eleventh amendment immunity when it enacts legislation under section 5 of the fourteenth amendment:

In that section Congress is expressly granted authority to enforce "by appropriate legislation" the substantive provisions of the Fourteenth Amendment, which them-

Case 0:00-cv-06151-PCH    Document 30    Entered on FLSD Docket 05/17/2000    Page 12 of 12

Page 8

863 F.2d 1543, *1549; 1989 U.S. App. LEXIS 539, **16;
52 Fair Empl. Prac. Cas. (BNA) 3; 48 Empl. Prac. Dec. (CCH) P38,622

selves embody significant limitations on state authority. When Congress acts pursuant to § 5, not only is it exercising legislative authority that is plenary within the terms [**17] of the constitutional [*1550] grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority. We think that Congress may, in determining what is "appropriate legislation" for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts.

*Id.* at 456, 96 S. Ct. at 2671 (footnote omitted). The Court went on to find that by a 1972 amendment to Title VII of the Civil Rights Act of 1964 that allowed private litigants to recover money damages from state governments, Congress intended to effect such a waiver of the states' eleventh amendment immunity. *Id.* at 457, 96 S. Ct. at 2672. Because appellants' claim under *42 U.S.C. § 2000e* arises under Title VII of the 1964 Act, no eleventh amendment barrier exists. The district court erred in finding that the eleventh amendment barred appellants' cause of action under section 2000e.

The eleventh amendment continues to be an obstacle to actions brought under *42 U.S.C. § 1983*. See *Quern v. Jordan, 440 U.S. 332, 99 S. Ct. [**18] 1139, 59 L. Ed. 2d 358 (1979)* (reaffirming *Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974)*, which held that Congress did not intend section 1983 to create a waiver of eleventh amendment immunity). The eleventh amendment does not, however, bar suits for equitable relief against state officers in their official capacity, see *Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)*, nor does the amendment preclude a damages award against state officials in their individual capacity. See *Kentucky v. Graham, 473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)*. Appellant's complaint distinguished between the appellees' individual and official capacities, and the district court should have construed the appellants' prayer for relief to conform to this long accepted practice. The district court erred in dismissing appellants' claims on the basis of sovereign immunity.

III.

We vacate the judgment of the district court, and remand this case for further proceedings.

VACATED [**19] and REMANDED.