UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6151-Civ-Huck/Brown

**NIGHT BOX**
**FILED**

⟨stamp⟩ SEP 1 2 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

JOYCE WILLIAMS, individually;
MICHAEL FERGUSON, individually;
JOSEPH PATRICK MCMULLEN,
individually; DELORES OKONMAH,
individually; BERNICE SHORTER-
MEARES, individually; CONSTANCE
ECHEBIRI, individually; MIA DAWN
TAYLOR, individually; CARMITA
MCMULLEN, individually;

       Plaintiffs,

vs.

WALGREEN COMPANY,

       Defendant.

_____/

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**MOTION TO COMPEL BETTER ANSWERS TO**
**PLAINTIFFS' INTERROGATORIES AND REQUEST FOR PRODUCTION**

Pursuant to Fed. R. Civ. P. 37 and S.D. Fla. L.R. 7.1 and 26.1, Defendant Walgreen Co. ("Walgreens") files this response in opposition to Plaintiffs' Motion to Compel. The motion should be denied because, as a whole, it is an improper and premature attempt to utilize the Court's resources to deal with discovery issues that the rules expressly require counsel to handle. Ignoring the Court's rules regarding good faith efforts to resolve discovery disputes between the parties, the Plaintiffs' motion alerts Walgreens to alleged deficiencies in their prior responses that would have required only a telephone call to resolve. Indeed, in many instances Walgreens had agreed to produce the information requested by Plaintiffs yet counsel had simply failed to review them.

In response to this motion, Walgreens has addressed those concerns through supplemental responses that render the motion's objections largely moot. To the extent that any substantive

disagreements remain, the Court should deny the motion to the extent that Plaintiffs are seeking wholly unnecessary and overbroad information or documents at this stage of the case.

## INTRODUCTION

On January 29, 1997, Joyce Williams filed a charge of discrimination with the EEOC against her employer, Walgreens, alleging that "I [Ms. Williams] have been denied an opportunity to apply for promotion to the positions of Store Manger and Pharmacy Manager in the Tampa Bay Area." *First Amended Complaint* at Exhibit C.[1] Based solely on Ms. Williams' EEOC charges, she, along with ten other current and former Walgreens pharmacists (who never filed EEOC charges), filed a class action lawsuit alleging that Walgreens engaged in a long-term systemwide pattern and practice of racial discrimination that affected a large number of black pharmacists. On April 11, 2000, the Court granted Plaintiffs' voluntary dismissal of the case as a class action and the voluntary dismissal of three of the plaintiffs.

The eight remaining Plaintiffs, individually, filed a First Amended Complaint asserting a litany of alleged discrimination claims occurring primarily in the Tampa, Miami-Dade, and Broward areas from 1982 through the present regarding age discrimination, constructive discharge, falsifying disciplinary records, transferring to underperforming stores, assigning undesirable work schedules, and failing to promote pursuant to Title VII disparate treatment, Title VII disparate impact, §1981 disparate treatment, the Age Discrimination in Employment Act, and the Florida Civil Rights Act.

Walgreens filed a Motion to Dismiss the First Amended Complaint. Walgreens argued that the seven other Plaintiffs, in joining this lawsuit, made the deliberate decision to by-pass the EEOC investigation of their individual charges and to, instead, join forces with Ms. Williams on the strength of her charges. In doing so, the fate of their claims were directly related to the fate of Ms. Williams' claims. Walgreens argued that because Ms. Williams' EEOC charges were untimely and

---

[1] Ms. Williams amended this charge seven days later by adding a statement that she "believed that Black employees as a class have been discriminated against in regards to promotions." *First Amended Complaint* at Exhibit D. Over two years later, Ms. Williams filed another charge of discrimination alleging that she – not Black employees as a class – was discriminated against because Walgreens allegedly forced her to use sick time/days and denied her several promotions to management positions in retaliation for filing a previous charge of discrimination. *First Amended Complaint* at Exhibit E.

2

defective, the Court should dismiss all of Plaintiffs' Title VII claims and Ms. Williams' age claim. Walgreens argued in the alternative that even if Plaintiffs could proceed on the basis of Ms. Williams' charges, the Court should dismiss Plaintiffs' First Amended Complaint because allegations of discrimination spanning twenty years in time and two hundred miles in geography could not reasonably grow out of an individual's age and race claim regarding denial of promotional opportunities to in-store positions in the Tampa Bay area.

On August 16, 2000, the Court granted in part and denied in part Walgreens' Motion to Dismiss. *See* Order, dated Aug. 16, 2000. The Court granted Walgreens' Motion "to the extent it seeks a dismissal of Plaintiffs' claims under the Florida Civil Rights Act." *Id.* at 9. The Court also granted Walgreens' Motion "to the extent Plaintiffs Ferguson, Joseph McMullen, Okonmah, Meares, Echebiri, Taylor and Carmita McMullen[] assert claims under Title VII based on Walgreens' creation of false disciplinary reports, failure to address racial slurs from customers and staff, discriminatory scheduling, termination and denial of coverage for medical expenses and constructive discharge." *Id.* The Court stated that "Plaintiffs Ferguson, Joseph McMullen, Okonmah, Meares, Echebiri, Taylor and Carmita McMullen may assert their Title VII claims of discrimination with respect to promotion." *Id.*

It was during the period that Walgreens' motion to dismiss was pending that the parties engaged in an initial round of discovery. Plaintiffs served their discovery on June 9, 2000. Walgreens, after obtaining a brief enlargement, timely served its responses on July 24, 2000, almost one month before the Court's Order on the Motion to Dismiss. After receiving only cursory general notice that Walgreens' discovery responses were deemed insufficient by Plaintiffs' counsel, Walgreens and the Court are now being forced to respond to Plaintiffs' Motion to Compel. After Walgreens' supplementation of its earlier responses where appropriate, the Court will find that the remaining issues raised in the motion should be denied.

## MEMORANDUM OF LAW

**I.    Plaintiff Failed To Use Good Faith Efforts To Resolve
The Discovery Disputes Regarding Their Production Requests**

Plaintiffs have failed to show that good faith efforts were made prior to filing their Motion and thus, this Court should deny, in part, Plaintiffs' motion. The Local Rules clearly mandate that

3

"counsel for the moving party shall confer . . . with counsel for the opposing party in a good faith effort to resolve by agreement the issues to be raised in the discovery motion." S.D. Fla. L.R. 26.1(I). Plaintiffs never communicated to or informed Walgreens that they had any concerns with Walgreens' responses to Plaintiffs' production requests; Plaintiffs, rather, raised concerns only with Walgreens' responses to several interrogatories. *See* Letter to Brian L. Lerner, dated Aug. 11, 2000, attached as Exhibit A.

Because Plaintiffs filed their Motion to Compel without even attempting to resolve – let alone contact – the production request issues with Walgreens, this Court should deny Plaintiffs' request to compel production. *See Republic of Haiti v. Crown Charters, Inc.*, 667 F. Supp. 839, 850 (S.D. Fla. 1987) ("The court does not take lightly the failure of any attorney to endeavor to resolve discovery problems in accordance with the letter and spirit of Local General Rule 10(I)(7). Hereafter in this litigation, the court will consider imposing sanctions for noncompliance with this rule or where the court finds that counsel did not make a good faith effort to resolve discovery disputes."); *see also Taylor v. Florida Atl. Univ.*, 132 F.R.D. 304, 305 (S.D. Fla. 1990) (denying motion to compel without consideration for failure to certify that counsel conferred with opposing counsel in a good faith effort to resolve the dispute and has been unable to do so); *Maples v. National Enquirer*, 763 F. Supp. 1137, 1144 (N.D. Ga. 1990) ("The Court notes that Local Rule 225-4 has not been complied with in that no good faith conference to resolve discovery disputes was held. Hence Plaintiff's Motion to Compel is denied without prejudice.").

With respect to the interrogatories, Plaintiffs' motion presents specific arguments about Walgreens' discovery responses. These arguments were not raised through the Rule 26 informal process; rather, Plaintiffs opted to raise these issues for the first time in this Motion. *Cf.* Letter to Brian L. Lerner, dated Aug. 11, 2000. Nevertheless, in light of Plaintiffs' arguments and the scope of this case as set forth in the Court's order of August 16, 2000, Walgreens has responded to this motion and supplemented its earlier responses in Walgreens' good faith effort to narrow the issues as best as possible. As to some issues over which the parties will continue to have substantive disagreement, those issues are addressed in this Response.

4

## II.    **Plaintiffs' Motion to Compel is Largely Moot**

Assuming Plaintiffs have established a good faith basis for bringing the motion, which they have not, the motion, in large part, is moot. Plaintiffs move to compel on one interrogatory and twelve production requests arguing that Walgreens failed to produce documents that it agreed to produce in its responses. *See Plaintiffs' Motion to Compel Discovery* ("*Motion*"), dated Aug. 25, 2000, at 15. Plaintiffs maintain that they contacted Walgreens to set up a day and time for inspection and copying but were unable to establish a day and time. *See id.* Plaintiffs' statement as to contacting Walgreens is false. Plaintiffs never contacted counsel for Walgreens to set up a date and/or time to inspect and/or copy any of the documents Walgreens agreed to produce. *See* Affidavit of Brian L. Lerner, attached as Exhibit B. In fact, having not heard from Plaintiffs' counsel on this issue since serving its responses over a month ago, Walgreens reminded counsel that documents being produced remained available for inspection. *See* Letter to Kelsay D. Patterson, dated Aug. 25, 2000, attached as Exhibit C. Plaintiffs never contacted Walgreens and still have not contacted Walgreens regarding these documents and chose instead to waste the Court's time in this respect.

Plaintiffs' argument that they did not request documents to be inspected and copied but rather produced also is meritless. *See Motion* at 6. The rules clearly contemplate that Walgreens need not copy documents at its own costs and then deliver these documents to Plaintiffs.[2] The Federal Rules provide:

> The party upon whom the request is served shall serve a written response within 30 days after the service of the request . . . . The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated.

Fed. R. Civ. P. 34(b) (emphasis added). Recognizing this principle, the Local Rules provide that "documents shall be made available for inspection and copying within ten days after service . . . or at a date agreed upon by the parties." S.D. Fla. L.R. 26.1(G)(8)(d). Indeed, the Discovery Practices Handbook for the Southern District of Florida provides that the "[t]he copying of documents will

---

[2] The Federal and Local Rules also authorize "answer[ing] any interrogatory by reference to records from which the answer may be derived or ascertained." S.D. Fla. L.R. 26.1(G)(8).

5

generally be the responsibility of the inspecting party" and the "cost of this procedure shall be borne by the party seeking the discovery." S.D. Fla. Gen. App. A(III)(B)(d).

Walgreens, in responding to Plaintiff's Requests for Production, followed the applicable discovery rules by stating that documents were available for inspection and copying. Thus, Plaintiffs' motion, with respect to Interrogatory No. 4 and Production Request Nos. 1, 4, 11, 13-21, should be denied as moot.

### III.   Walgreens' Discovery Objections To Plaintiffs' Interrogatories Are Proper

#### Interrogatory No. 1.

This interrogatory requests information about the persons who assisted in answering the interrogatories. Walgreens believed that it responded to this interrogatory but in response to the arguments being raised for the first in the motion, Walgreens has agreed to provide the name, job title, and address for those persons who assisted in answering the interrogatories. Walgreens believes that it has fully answered this interrogatory and any grounds for compelling are moot.

#### Interrogatory No. 4.

This interrogatory requests the names of all pharmacists employed by Walgreens who were promoted to the position of Pharmacy Manager. After receiving Plaintiffs' letter generally complaining about some of Walgreens' responses to Plaintiffs' interrogatories, Walgreens requested until August 25, 2000, to review and analyze these responses. *See* Letter to Kelsay D. Patterson, dated Aug. 16, 2000, attached as Exhibit D. On August 25, 2000, Walgreens sent a letter to Plaintiffs addressing the interrogatory responses identified by Plaintiffs point-by-point.[3] Although the Federal and Local Rules do not impose such a requirement, Walgreens served a copy of a list responsive to this interrogatory. *See* discussion *supra* Part II. Although Walgreens knows of no such requirement under the Federal discovery rules, Walgreens has agreed to supplement this list with the Social Security numbers for these persons. Accordingly, Walgreens believes that it has fully answered this interrogatory and any grounds for compelling are moot.

---

[3] Notably, Plaintiffs filed and served their Motion to Compel on that same day without even waiting for Walgreens' response although Walgreens was granted until August 25, 2000, to respond.

6

**Interrogatory No. 7.**

This interrogatory requests the names of Walgreens personnel who recruited students from Florida A & M's School of Pharmacy. Walgreens objected to this interrogatory stating that "Plaintiffs allege that Walgreens failed to promote them to specific management positions based on their race, not that Walgreens failed to hire them. Accordingly, Walgreens' recruiting efforts at Florida A&M University are completely irrelevant to the instant action and could not possibly lead to the discovery of admissible evidence." Walgreens Response to Plaintiffs' First Set of Interrogatories, No. 7, dated July 24, 2000. Walgreens' objections are supported by the Court's August 16, 2000, Order, which made clear that this case involved an alleged failure to promote. *See* Order, dated Aug. 16, 2000, at 6.

While Plaintiffs' § 1981 disparate treatment claims did survive, none of the plaintiffs allege that Walgreens failed to hire them – indeed, each and everyone one of the plaintiffs was hired by Walgreens. Regardless of the plaintiff and their respective claims, this case is limited to the alleged discriminatory motives in the post-hiring decisions by Walgreens. Even under the more liberal discovery standards, the recruitment of potential employees is not even remotely relevant to the post-hiring decisions that are the basis of Plaintiffs' lawsuit.

Plaintiffs argue that representations as to Walgreens' policies were made during this recruitment process. *See Motion* at 8. Their argument is unpersuasive because, as Plaintiffs state in their own words: "[t]hose representations made at that time, and the ongoing representations by the Defendant [] have been affirmed in policy manuals and company guidelines." *Id.* (emphasis added). While Plaintiffs argue that representations made during their recruitment are critical, they concede that these same representations were memorialized in Walgreens' policy manuals, handbooks, and company guidelines – which Walgreens agreed to produce. *See* Walgreens' Responses to Plaintiffs' Request for Production, No. 11, dated July 24, 2000. Therefore, even if recruitment promises and recruitment information were relevant, which it is not, Plaintiffs have this information through the manuals, handbooks, and guidelines.

**Interrogatory No. 8.**

This interrogatory requests a list of all black pharmacists employed by Walgreens in the state of Florida from 1995 through 2000. Walgreens objected to this interrogatory as over broad, unduly

7

burdensome, irrelevant, and not likely to lead to the discovery of admissible evidence. The basis for these objections is that this case is no longer a class action lawsuit. On April 11, 2000, Plaintiffs voluntarily dropped their class action allegations and filed a First Amended Complaint. The First Amended Complaint was brought on behalf of eight individuals – six of whom worked in stores located in North Miami-Dade County and South Broward County and two of whom worked in stores located in the Tampa and Orlando area. Plaintiffs' voluntary dismissal, in combination with the Court's August 16, 2000, Order, confirm the scope and breadth of this case.

Plaintiffs, nonetheless, seek to expand discovery beyond the stores where they worked and even beyond the districts where they worked, to encompass the entire state of Florida. The untoward basis for casting their net over such a vast area is undoubtedly for Plaintiffs' counsel to locate additional possible plaintiffs (i.e., clients) before "all statute of limitations concerns have run." *Motion* at 9. Walgreens could find no authorities supporting the relevancy of producing names in a non-class action disparate impact setting – which is the case here. Walgreens, rather, found case law where the courts ordered the production of names in a class action setting only because producing the names facilitated notice to potential plaintiffs. *See Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *see also Hipp v. Liberty Nat'l Life Ins. Co.*, 164 F.R.D. 574, 576 (M.D. Fla. 1996) (ordering that the defendants provide names and addresses so as to allow plaintiffs to identify potential class members); *but see Brooks v. Bellsouth Telecomm., Inc.*, 164 F.R.D. 561, 571 (N.D. Ala. 1995) ("[T]he discovery of names and addresses of potential class members in this case is not relevant to the ADEA action as this court has decided to deny plaintiff's motion for conditional class certification. The evidence produced through discovery indicates that plaintiff's claim is sufficiently personal and individual in nature as to preclude class action treatment.").

Plaintiffs' assertions, however, are not the standard by which discovery is measured and is certainly not part of an effort by Walgreens to hide the names of persons who may or may not be witnesses. *See Motion* at 9. Walgreens objections are based on established precedent that provides that in employment discrimination cases discovery is limited to information about employees in the relevant employing unit absent a showing of a more particularized need for, and the likely relevance of, broader information. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084-85 (11th Cir. 1990) (holding that without a showing that employment decisions were made outside the local

8

geographic level, where the natural focus of any complaint of discrimination would be, discovery should be limited to the local level); *see also Serina v. Albertson's, Inc.*, 128 F.R.D. 290, 291-92 (M.D. Fla. 1989); *James v. Newspaper Agency Corp.*, 591 F.2d 579, 582 (10th Cir. 1979); *Prouty v. National R.R. Passenger Corp.*, 99 F.R.D. 545, 547 (D. D.C. 1983).

Walgreens recognizes that many of the plaintiffs moved between stores and that decisions affecting pharmacists are made at the store level and at the district level. Walgreens also recognizes the relevancy of numerical figures to conduct statistical analyses in a disparate impact case. Accordingly, Walgreens has agreed to produce the number of black pharmacists employed in the relevant districts where the plaintiffs worked from 1995 through 2000.

Walgreens, however, does not believe that Plaintiffs' justifications (that there are black pharmacists working in other parts of Florida) to broaden discovery beyond the store and even beyond the district level at this stage of the case, particularly in a non-class action lawsuit involving individuals who worked in only seven districts,[4] establishes the particularized need and likely relevance to broaden the scope of discovery. *See Thornton v. Mercantile Stores Co., Inc.*, 180 F.R.D. 437, 440 (M.D. Ala. 1998) ("A vague possibility that loose and sweeping discovery might turn up something . . . does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry."). Plaintiffs' attempt to compel discovery beyond the relevant employing unit should be denied. *See Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978) (denying a division-wide discovery request that encompassed some 7,500 employees in thirty-two districts and three manufacturing plants);[5] *see also Serina*, 128 F.R.D. at 291 (finding that the plaintiff was only entitled to discover information regarding bonus managers in stores in which he had worked); *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 907 (6th Cir. 1991) (holding that when the employment decisions were made locally, discovery may properly

---

[4] Currently, these seven districts in some of Florida's most heavily populated areas (i.e., Tampa, Miami, Ft. Lauderdale, and Orlando) encompass approximately 182 stores.

[5] "In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981." *Gellington v. Christian Methodist Episcopal Church, Inc.*, 203 F.3d 1299, 1301 n.1 (11th Cir. 2000).

9

be limited to the employing unit); *Haselhorst v. Wal-Mart Stores, Inc.*, 163 F.R.D. 10, 11 (D. Kan. 1995) ("In employment discrimination cases, discovery is usually limited to information about employees in the same department or office absent a showing of a more particularized need for, and the likely relevance of, broader information."); *Cisko v. Commonwealth Edison Co.*, 1995 WL 117989, *2 (N.D. Ill. Mar. 16, 1995) (finding that "the 'vague possibility that loose and sweeping discovery might turn up something' to be insufficient to move the discovery beyond its more natural, localized focus" and thus requiring discovery be limited to one office (quoting *Earley*, 907 F.2d at 1085)).

### Interrogatory No. 9.

This interrogatory requests the number of pharmacists, Pharmacy Managers, and Pharmacy Supervisors employed by Walgreens in the state of Florida from 1995 through 2000. Walgreens recognizes that these numbers may be necessary to conduct a statistical analysis. That argument alone, however, does not justify widening the scope and breadth of discovery beyond the relevant employing unit. *See* discussion *supra* Part III, Interrogatory No. 8. Walgreens has agreed to produce the precise number of pharmacists, Pharmacy Managers, and Pharmacy Supervisors employed by Walgreens for the relevant districts from 1995 through 2000. This information should provide the necessary figures to conduct Plaintiffs' statistical analysis.

### Interrogatory No. 10.

This interrogatory requests a list of documents that reference or address the objective and subjective criteria used in determining candidates for the position of Pharmacy Manager and Pharmacy Supervisor. Walgreens has agreed to produce documents responsive to this interrogatory pursuant to Fed R. Civ. P. 33(d). The motion to compel a better answer to this interrogatory is moot.

### Interrogatory No. 11.

This interrogatory requests market research and/or demographic research regarding Florida's customer/consumer base. Walgreens objected to this interrogatory as over broad, unduly burdensome, irrelevant, and not likely to lead to the discovery of admissible evidence. Customer/customer base studies are not relevant to this case, which involves allegations of failure to promote and disparate treatment allegations regarding post-hiring decisions. Information regarding consumer purchasing habits or consumer demand would not lead to the discovery of

STEEL HECTOR & DAVIS LLP

admissible evidence with respect to allegations of constructive discharge, age discrimination, failure to promote, unfavorable scheduling, and retaliation. The Plaintiffs' motion sheds no other light on how customer base studies have any relevance to their disparate treatment claims. To request Walgreens to engage in a fishing expedition with no tenable basis in the record is unwarranted.

**Interrogatory No. 12.**

This interrogatory requests information related to market research and/or demographic research regarding Walgreens' Florida pharmacy workforce. To the extent this interrogatory requests internal company research regarding the statistical makeup of its pharmacy workforce, Walgreens agreed to produce such documents in response to other interrogatory/production requests and within the geographic scope explained above. To the extent that this interrogatory seeks information other than that, Walgreens does not believe at this time any such information exists. To the extent any such information is located during the course of discovery, and to the extent it is limited to the appropriate geographic area, Walgreens will provide Plaintiffs with that information.

**Interrogatory No. 13.**

This interrogatory requests the name of the custodian for the information requested in Interrogatory Nos. 11 and 12. Walgreens would refer the Court to the responses set forth in those interrogatories. To the extent any such custodian exists of any discoverable information related to these interrogatories, they will be identified. To that extent, Walgreens believes that it has fully answered this interrogatory and any grounds for compelling are moot.

**Interrogatory No. 14.**

This interrogatory requests information related to Walgreens' requests for market research and/or demographic research regarding Walgreens' Florida customer/consumer base and Florida workforce. Walgreens recognizes that surveys and studies of Walgreens' workforce may be relevant under the more liberal discovery rules. That argument alone does not justify widening the scope and breadth of discovery beyond the relevant employing unit. Walgreens has agreed to produce any surveys and studies relating to Walgreens' workforce for the relevant districts.

STEEL HECTOR & DAVIS LLP

## IV.    Walgreens' Discovery Objections To Plaintiffs' Production Requests Are Proper

### Production Request No. 1.

This request seeks salary information about nineteen people, which Walgreens never objected to producing. As detailed above, Plaintiffs' attempt to compel production is brought in bad faith and is moot. *See* discussion *supra* Parts I and II. These documents have been and continue to be available for inspection and copying. Plaintiffs have not contacted Walgreens requesting to inspect or copy these documents since Walgreens served this discovery approximately six weeks ago.

### Production Request Nos. 2 and 3.

These requests seek information about Walgreens' recruitment at pharmacy schools throughout Florida. As argued above, this case involves the alleged failure to promote eight pharmacists. Plaintiffs' disparate treatment claims all involve allegedly discriminatory motives in post-hiring decisions. Even under the more liberal discovery standards, documents related to the recruitment of potential employees is not even remotely relevant.

Even if the recruitment process were relevant, Plaintiffs, as they argued with respect to Interrogatory No. 7, seek information about alleged representations made by Walgreens during the recruitment process. Plaintiffs, however, concede that these alleged representations have been memorialized in handbooks, manuals, and guidelines – all of which Walgreens agreed to produce.

### Production Request No. 4.

This request seeks the personnel and disciplinary files of all the plaintiffs, which Walgreens agreed to produce without objection. Walgreens followed the applicable discovery rules by stating that documents were available for inspection and copying. These documents have been awaiting Plaintiffs for approximately six weeks because Plaintiffs have never requested to inspect and/or copy these documents – a cost that Walgreens does not have to front. *See* discussion *supra* Part II. Plaintiffs' attempt to compel production on this request is moot.

### Production Request No. 6.

This request seeks information about letters sent to black pharmacists offering the opportunity to interview for the position of Pharmacy Supervisor in Florida. Walgreens does not have documents responsive to this request from April 1, 1997, through January 1, 2000. Walgreens is in the process of determining if documents from January 1, 1995, through April 1, 1997, exist.

12

Should such documents exist, these documents should be available to Plaintiffs for inspection and copying after September _, 2000.

**Production Request No. 9.**

This request seeks a list of all black pharmacists employed by Walgreens in Florida from 1995 through 2000. Walgreens has agreed to produce the number of black pharmacists in the relevant employing units from 1995 through 2000 to aid Plaintiffs in conducting their statistical analyses.

Contrary to Plaintiffs' argument, Walgreens did not agree to produce a list of all black pharmacists throughout Florida in its interrogatory responses. *See Motion* at 19. Walgreens did agree to produce a list of Pharmacy Managers that were promoted from 1998 through 2000, but not such as Plaintiffs maintain. *See* Walgreens' Response to Plaintiffs' First Set of Interrogatories, No. 4, dated July 24, 2000. Walgreens produced this list because some of these persons were identified in Plaintiffs' First Amended Complaint and in Plaintiffs' subsequent discovery, and thus, their possible significance to this case goes beyond mere statistical analysis.

**Production Request No. 10.**

This request seeks a list of all pharmacists employed by Walgreens in Florida from 1995 through 2000. Walgreens has agreed to produce the number of pharmacists in the relevant employing units from 1995 through 2000 to aid Plaintiffs in conducting their statistical analyses. Walgreens is uncertain as to how not producing the names of pharmacists would make it "inconceivable" to perform "statistical, demographics, and numerical analysis." *Motion* at 20.

In disparate impact cases, the plaintiffs compare numbers from relevant samples to establish a prima facie case. For example, in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989), the Court held that the proper comparison was between the proportion of members of the protected class in the employer's work force and the proportion of members of that protected class in the qualified labor pool available to the employer. Comparison of numbers, not names, is how plaintiffs and defendants conduct disparate impact analyses. *See, e.g.*, *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 952 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992) (finding that fact that only 2 out of 860 auto dealerships are black-owned is insufficient proof of discrimination without relevant comparison – "[t]o say that very few blacks have been selected by Honda does not say a great deal

STEEL HECTOR & DAVIS LLP

about Honda's practices unless we know how many blacks have applied and failed and compare that to the success rate of equally qualified white applicants." (emphasis added)); *Hagans v. Andrus*, 651 F.2d 622, 627 (9th Cir.) (reviewing statistical analysis with respect to percentages of women in high-level positions), *cert. denied*, 454 U.S. 859 (1981).

Again, Plaintiffs' basis for seeking such a list of persons who have not been identified by any party as having any knowledge relevant to their specific claims is simply so that Plaintiffs' counsel can locate additional possible plaintiffs (i.e. clients) before "all statute of limitations concerns have run." *Motion* at 9. As argued above, Walgreens was unable to find authority to support the relevancy of producing names in a non-class action disparate impact setting based on the notion that these names are essential to conducting statistical analyses. *See Hoffmann-LaRoche, Inc*, 493 U.S. at 169; *see also Hipp*, 164 F.R.D. at 576 (ordering that the defendants provide names and addresses so as to allow plaintiffs to identify potential class members). Walgreens, however, was able to find case law limiting discovery in employment discrimination cases to information about employees in the relevant employing unit absent a showing of a more particularized need for, and the likely relevance of, broader information. *See Marshall*, 576 F.2d at 592 (denying a division-wide discovery request that encompassed some 7,500 employees in thirty-two districts and three manufacturing plants); *see also Lee v. Executive Airlines, Inc.*, 31 F. Supp. 2d 1355, 1356 (S.D. Fla. 1998) (limiting discovery requests to one facility); *Serina*, 128 F.R.D. at 291 (finding that the plaintiff was only entitled to discover information regarding bonus managers in stores in which he had worked).

Recognizing that many of the plaintiffs moved between stores and that decisions affecting pharmacists are made at the store level and at the district level, Walgreens has agreed to produce the number of pharmacists employed in the relevant districts where Plaintiffs worked from 1995 through 2000 – information, at this time, that spans approximately seven districts and approximately 180 stores. To that extent, the motion to compel is moot. To the extent Plaintiffs insist on broader information without any identifiable basis in the record, the motion to compel for this request should be denied.

**Production Request Nos. 11, 13-21.**

Plaintiffs moved to compel on these requests arguing that Walgreens is purposing withholding documents it agreed to produce. *See Motion* at 20. Walgreens agreed to produce

14

documents responsive to each of these requests. These documents have been and continue to await Plaintiffs. No efforts have been made to thwart Plaintiffs nor could any efforts been made to thwart Plaintiffs because they never contacted Walgreens to discuss a mutually convenient time and place in which to inspect and copy these documents. Plaintiffs' attempt to compel production on these requests is moot.

### Production Request No. 22.

This request seeks personnel files, performance evaluations, customer complaints, and disciplinary records for every non-black pharmacist employed by Walgreens in the state of Florida from 1998 through 2000. Walgreens objected to this request as over broad, unduly burdensome, irrelevant, and not likely to lead to the discovery of admissible evidence. Walgreens specifically requested Plaintiffs to narrow the scope of their request about comparator information.

Plaintiffs' request is completely improper and conveys that they have not articulated basis for proceeding with this lawsuit. To establish racial discrimination through circumstantial evidence, Plaintiffs must first prove a prima facie case that: (1) they belongs to a racial minority; (2) they were subjected to adverse job action; (3) their employer treated similarly situated employees outside their classification more favorably; and (4) they were qualified to do the job. *See Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997).

Plaintiffs seek to peruse several thousand personnel files in the hopes of finding relevant comparators to meet the third element of the prima facie case. This request is not only improper but completely over broad and burdensome. Just as courts limit the scope of discovery to the relevant employing unit, courts also limit the scope of discovery with respect to comparators.

> [I]n order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiffs, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.

*Mazzella v. RCA Global Communications, Inc.*, 642 F. Supp. 1531, 1547 (S.D. N.Y. 1986), *aff'd*, 814 F.2d 653 (2d Cir. 1987) (emphasis added); *see also Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997); *St. Hilaire v. Pep Boys*, 73 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999).

STEEL HECTOR & DAVIS LLP

The courts have consistently taken a strict approach as to what constitutes a "similarly situated" employee for the obvious reason that if a court is over-inclusive, then it begins to substitute its judgment for the business judgment of the employer. *See e.g., Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1312, *superseded in part on other grounds,* 151 F.3d 1321 (11th Cir. 1998); *Nix v. WLCY Radio,* 738 F.2d 1181, 1186-87 (11th Cir. 1984) (finding that while two employees violated the same policy the circumstances were different so they were not "similarly situated"); *Ward v. Procter & Gamble Paper Prods. Co.,* 111 F.3d 558, 561 (8th Cir. 1997) (finding that two employees involved in the same altercation were not similarly situated because their conduct was different and they had different disciplinary histories).

As one court stated, "[w]e require that the quantity and quality of the comparator's misconduct be **nearly identical** to prevent courts from second-guessing employers' reasonable decisions and confusing apples and oranges." *St. Hilaire,* 73 F. Supp. 2d at 1371 (emphasis added) (finding the plaintiff and the comparator not similarly situated because the plaintiff discounted for friends while the comparator discounted for family) (quoting *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir. 1999)); *see also Jones v. Winn-Dixie Stores, Inc.,* 75 F. Supp. 2d 1357, 1365 (S.D. Fla. 1999) (finding insubordination of comparator and insubordination of the plaintiff not "virtually identical".

Walgreens' objections were proper in light of the standard that governs discovery and in light of Plaintiffs' allegations. Walgreens does not have the burden of establishing Plaintiffs' case. Plaintiffs, rather, in initiating their lawsuit, are the ones who must know the names of those that are arguably similarly situated and were treated more favorably than Plaintiffs were treated.[6] In fact, this type of discovery request (i.e., comparator information) is more properly propounded by a defendant than a plaintiff.

Plaintiffs request is an attempt to look through thousands and thousands of documents in the hopes of finding one person who arguably was treated better – one person who most likely would not work in the same store under the same supervisor (let alone in the same district) and who most likely did not commit the same misconduct. *See Tally v. Bravo Pitino Restaurant Ltd.,* 61 F.3d

---

[6] Plaintiffs request does not even seek the personnel files of those they appear to allege as being comparators in their First Amended Complaint.

16

1241, 1247 (6th Cir. 1995) (finding that individuals with whom plaintiff seeks to compare his treatment must have dealt with the same supervisor, been subject to the same standards, and engaged in the same conduct).[7] Plaintiffs' request seeks to establish a prima facie case – something they were supposed to have established prior to filing their First Amended Complaint.

Plaintiffs' request is so overly broad, so burdensome, that even Plaintiffs themselves cite no case law to support their proposition that Walgreens must provide them with the personnel files of every single person – except the plaintiffs – so that Plaintiffs may find the relevant comparators.

_____

[7] Assuming Plaintiffs' allegations that Walgreens uses a subjective criteria to promote pharmacists are true, case law would require limiting discovery of comparators to the relevant districts. Indeed, if subjective criteria determines a promotion, the basis for promoting personnel under a different supervisor (in a different district) would not comparable based on the individual qualities and management styles of each decision maker. The subjective decision making process would dictate that comparators be limited, at a minimum, to the same decision maker.

## CONCLUSION

For these reasons, Walgreens respectfully requests this Court deny Plaintiffs' Motion to Compel in part for being brought in bad faith, in part for being moot, and in part for seeking to enlarge the scope of discovery beyond the relevant employing unit as is the standard by which discovery is governed in employment discrimination cases.

Respectfully submitted,

STEEL HECTOR & DAVIS LLP
Attorneys for Defendant Walgreen Co.
200 South Biscayne Boulevard
Miami, Florida 33131-2398
(305) 577-7000 Telephone
(305) 577-7001 Telecopier

By: _____
        Edwin G. Torres
        Florida Bar No. 911569
        Heather L. Gatley
        Florida Bar No. 0050482
        Brian L. Lerner
        Florida Bar No. 0177202

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 12th day of September, 2000, to:

Kelsay D. Patterson, Esq.
Law Offices of Michael M. Tobin, P.A.
1099 Ponce De Leon Blvd.
Coral Gables, Florida 33134-3319

By: _____
        Brian L. Lerner

MIA_1998/614756-1

18

# LAW OFFICES OF
## MICHAEL M. TOBIN, P.A.
### 1099 PONCE DE LEON BOULEVARD
### CORAL GABLES (MIAMI), FLORIDA 33134-3319
### TEL (305) 445-5475   FAX (305) 445-5479

August 11, 2000

Brian Lerner, Esq.,
Steel Hector & Davis LLP
200 South Biscayne Blvd., 40th Floor
Miami, Florida 33131-2398

## *Via Fax (305)577-7001*

Re:          Joyce Williams, et al. v. Walgreen Company

Dear Mr. Lerner:

I will make certain that you have your requested discovery by Friday, August 18, 2000. With respect to Constance Echebiri's Response to Defendant's Request for Production, her responses are attached.

With respect to the scheduling conflict, the appropriate notice was filed and you were served. Attached is a copy of the Plaintiff's Notice of Conflict.

As far as Defendant's Responses to Interrogatories are concerned, the following paragraphs are grossly inadequate, evasive, and/or improper objections in light of the well known standard by which discovery is judged: "reasonably calculated to lead to admissible evidence". The Defendant also has until August 18, 2000 to amend, supplement, and fully answer paragraphs: 1, 4, 7, 8, 9, 10, 11, 12, & 14.

Without question, these matters are discoverable. The interrogatories touch upon the proportionality of promotions (statistical evidence); other possible fact witnesses; and seek the names of the custodians of specified information.

Sincerely,

MICHAEL M. TOBIN, P.A.

Kelsay D. Patterson
Kelsay D. Patterson

KDP/ch

RECEIVED AUG 1 5 2000

ATTACHMENT / EXHIBIT A

MICHAEL M. TOBIN          KELSAY D. PATTERSON          MARY LOU PRADO          RICHARD D. TOBIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6151-Civ-Huck/Brown

JOYCE WILLIAMS, individually;
MICHAEL FERGUSON, individually;
JOSEPH PATRICK MCMULLEN,
individually; DELORES OKONMAH,
individually; BERNICE SHORTER-
MEARES, individually; CONSTANCE
ECHEBIRI, individually; MIA DAWN
TAYLOR, individually; CARMITA
MCMULLEN, individually;

        Plaintiffs,

vs.

WALGREEN COMPANY,

        Defendant.

_____/

## AFFIDAVIT OF BRIAN L. LERNER

COUNTY OF MIAMI-DADE    }
                         }SS:
STATE OF FLORIDA          }

       Before me, the undersigned authority, personally appeared Brian L. Lerner, who, upon being placed under oath, said as follows:

       1.      My name is Brian L. Lerner. I am an attorney licensed to practice law in the State of Florida, and an associate in the law firm of Steel Hector & Davis, LLP, counsel for Walgreen Co. ("Walgreens"). I make this affidavit in support of Walgreens' Response to Plaintiffs' Motion to Compel.

       2.      I have personal knowledge of the facts set forth herein.

ATTACHMENT / EXHIBIT ___

3.      At no time prior to the filing of this response did Plaintiffs contact me to set up a mutually convenient date and time for Plaintiffs to inspect and copy documents. At no time prior to the filing of this response did Plaintiffs contact me to discuss any concerns regarding Walgreens' Responses to Plaintiffs' Request for Production of Documents.

4.      Additionally, I have contacted all other attorneys who are or who have worked on this matter and each responded that they were not contacted by Plaintiffs to set up a mutually convenient date and time for Plaintiffs to inspect and copy documents or contacted to discuss any concerns regarding Walgreens' Responses to Plaintiffs' Request for Production of Documents.

**AFFIANT SAYS NOTHING FURTHER**

_____
Brian L. Lerner

I hereby certify that on this 12th day of September, 2000, before me, an officer duly authorized in the State and County aforesaid to take acknowledgment, personally appeared Brian L. Lerner, who is personally known to me and he acknowledged before me that he executed the same as his free act and deed and who did take an oath.

In witness whereof, I have hereunto set my hand and seal in the State and County aforesaid as of this 12th day of September, 2000.

_____
Notary Public, State of Florida

Print or type Notary's name
Commission or Serial Number
My commission expires:



SUE MCCONNELL
MY COMMISSION #
EXPIRES: October
Bonded Thru Notary Public Underwriters

2

S T E E L ∎

H E C T O R

∎ D A V I Sˮ

Brian L. Lerner

August 25, 2000

Kelsay D. Patterson, Esq.
Law Offices of Michael M. Tobin, P.A.
1099 Ponce de Leon Boulevard
Coral Gables, Florida 33134-3319

     RE:   <u>Williams et al. v. Walgreen Company</u>

Dear Mr. Patterson:

     In your letter dated August 11, 2000, you communicated your concerns with respect to Walgreens' responses to Plaintiffs' Interrogatories, Nos. 1, 4, 7-12, and 14. Thank you for agreeing to provide us with an additional week within which to consider your letter. This time, as I indicated, was necessary to adequately and fully evaluate these discovery issues.

     With respect to Interrogatory No. 1, Walgreens believes that this response is adequate. Those who aided in the answers and objections were indicated in the answer and by way of signature. Please let me know how you deem our response inadequate.

     With respect to Interrogatory No. 4, although this request is premature according to S.D. Fla. L.R. 26.1(G)(2), I am enclosing a list of persons promoted to pharmacy manager between January 1, 1998, and January 1, 2000. This production does not waive any of Walgreens' objections as indicated in the answer and is subject to the confidentiality agreement and order entered into by the parties. Please note that additional documents, as indicated in Walgreens's responses to Plaintiffs' production requests, have been and continue to be available at this office. I have not received any request to set up a mutually convenient time so that you may inspect and copy these documents. Should you prefer, I would be willing to have these available documents copied and delivered to your office through my office or a third-party copier service. We would need to discuss the billing arrangement before proceeding with this option.

     With respect to Interrogatory Nos. 7-12, and 14, Walgreens believes that these responses are proper. First, S.D. Fla. L.R. 26.1(G)(2) expressly limits the types of interrogatories that parties may propound and these interrogatories certainly do not comply with the types of interrogatories envisioned by the Local Rules. <u>See</u> Discovery Practices Handbook, Appendix B (setting forth interrogatories that comply with the limitations of S.D. Fla. L.R. 26.1(G)(2)). Second, some of these interrogatories seek information that is not relevant, even under the more liberal discovery standard available later in this action. Information regarding recruitment, districts where Plaintiffs never

ATTACHMENT / EXHIBIT C

HECTOR
&DAVIS

Kelsay D. Patterson. Esq.
August 25, 2000
Page 2

worked, and customer/consumer base studies, are not reasonably calculated to lead to the discovery of admissible evidence – especially in an alleged failure to promote case. Third, this Court's Order on Walgreens' Motion to Dismiss, provides greater support for Walgreens' objection that these interrogatories are overbroad. Many of these interrogatories, in part, seek information for the entire state of Florida. This case, however, involves plaintiffs located in what appears to be three or four counties. Moreover, nothing in Ms. Williams' EEOC charges would indicate that her allegations are typical in other districts let alone the entire state. Fifth, you have not responded to our other objections and thus have not provided arguments for us to use in reconsidering our initial response.

Walgreens believes that initial discovery and depositions should commence as envisioned by the Local Rules and as suggested by this Court in its August 16, 2000, Order. Once this initial stage of discovery has been completed, we would be willing to reconsider these requests in accordance with the federal and local rules requiring correction or supplementation of discovery responses.

Very truly yours.

Brian L. Lerner

encl.

# STEEL ■
# HECTOR
# ■ DAVIS™

Steel Hector & Davis ...
200 South Biscayne Boulevard
Miami, Florida 33131-2398
305.577.7000
305.577.7001 Fax
www.steelhector.com

Brian L. Lerner
305.577.7048
blerner@steelhector.com

August 16, 2000

**VIA FACSIMILE**

Kelsay D. Patterson, Esq.
Law Offices of Michael M. Tobin, P.A.
1099 Ponce de Leon Boulevard
Coral Gables, Florida 33134-3319

     RE:    Williams v. Walgreen Company

Dear Mr. Patterson:

     This letter is to confirm our telephone conversation from this morning.  You agreed to give us an additional week (until August 25, 2000) to respond to your concerns regarding Walgreens' responses to Plaintiffs' Interrogatories.  I agreed to grant Plaintiffs the same time within which to serve interrogatory answers and responses to requests for production for Joyce Williams, Delores Okonmah, and Bernice Shorter-Meares as well as respond to Walgreens other discovery concerns addressed in prior letters.

     Additionally, I do recall having received your notice of conflict, which you attached to your August 11, 2000, letter.  In response, I checked with the Clerk of the Court yesterday to see if an Order has been entered by the Court with respect to rescheduling.  The Clerk informed me that no Order had been entered and that she did not expect that any such Order would be entered. As such, Walgreens still intends to appear at this hearing unless directed by the Court otherwise.

     Very truly yours,

Brian L. Lerner

ATTACHMENT / EXHIBIT D