NIGHT BOX
FILED
JAN 22 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6151-Civ-Huck/Brown

JOYCE WILLIAMS, individually;
MICHAEL FERGUSON, individually;
JOSEPH PATRICK MCMULLEN,
individually; DELORES OKONMAH,
individually; BERNICE SHORTER-
MEARES, individually; CONSTANCE
ECHEBIRI, individually; MIA DAWN
TAYLOR, individually; CARMITA
MCMULLEN, individually,

   Plaintiffs,

vs.

WALGREEN COMPANY,

   Defendant.
_____/

### DEFENDANT'S RESPONSE TO PLAINTIFFS' BRIEF ON SEVERANCE

            Edwin G. Torres
            Heather L. Gatley
            Brian L. Lerner
            STEEL HECTOR & DAVIS LLP
            Attorneys for Defendant Walgreen Co.
            200 South Biscayne Boulevard
            Miami, Florida 33131-2398
            (305) 577-7000 Telephone
            (305) 577-7001 Telecopier



STEEL HECTOR & DAVIS LLP

The sole question posed by the Court's Order of January 2, 2001, was whether an eight-plaintiff case raising different types of promotion discrimination claims and alleging different damages based on distinct employment and benefits packages should be severed at this stage of the litigation. The answer to that question is a resounding "Yes."

This case is ripe for a complete severance of the plaintiffs' claims which should not have been joined in one action in the first place and should not remain joined now for many reasons. In short, these eight plaintiffs worked (1) in different stores, (2) in different company districts, (3) during many different periods of time, (4) in different positions, (5) for different decisionmakers, and (6) they now complain about distinct and unique promotions they did not receive, all of which allegedly resulted in separate and distinct damages. As it stands now with all these plaintiffs misjoined in one case, the Court or jury would have to consider eight unique stories of why someone did not become a store manager, pharmacy manager, *or* pharmacy supervisor, *or* why someone did not receive such a promotion fast enough, *or* why, if they did receive such a promotion, Walgreens somehow did not provide them enough support with which to succeed. Eight different tales, eight different theories, and eight different damage claims for a trial involving many different witnesses. Severance is undoubtedly required pursuant to Rule 20 because joinder of multiple plaintiffs is proper only when the following two prongs are met: (1) there must be a right to relief arising out of the same transaction and occurrence or series of transactions or occurrences; *and* (2) there must be a question of law or fact common to all plaintiffs which arise in the action. Fed. R. Civ. P. 20(a). As the cases cited herein demonstrate, if the plaintiffs' claims fail to satisfy either of these two elements, then the claims and parties are misjoined and must be appropriately severed.[1]

---

[1] With such abbreviated briefing, Walgreens will not deal in depth with plaintiffs' suggestions in their Brief that the court should stay this matter for 90 days pending the arrival of "class counsel" to deal with this case. The class claims originally raised in this case no longer exist and the time for doing so has long since passed (not to mention the fact that on the merits a class action here would be impossible). Simply put, there is no reason to delay the Court's severance of this case at this time. Walgreens was preparing to raise this issue itself before it received the Court's Order.

1

I.  **Eight Different Claims Do Not Arise Out Of The Same Transaction And Occurrence**

First, these eight plaintiffs should be severed because the relief sought arises out of separate and distinct transactions or occurrences. The Amended Complaint ("Complaint") purports to join eight disparate treatment claims in one action over unreceived, untimely received, *or* poorly received promotions of Walgreens' pharmacists to various management positions.[2] That is, remarkably, as "similar" as these claims get. Some of the plaintiffs were promoted, some were not, and two plaintiffs seek relief for constructive discharge. First Am. Compl. ¶¶ 90, 94, 240, 244. Four plaintiffs seek relief because Walgreens allegedly created false disciplinary records or disciplined the plaintiff for "minute, inconsequential, and insignificant events." *Id.* ¶¶ 24, 60, 92, 182, 186. Some plaintiffs seek relief because, although promoted, Walgreens transferred them to allegedly underperforming stores or allegedly gave them less desirable work schedules. *See id.* ¶¶ 56-59. Even race discrimination itself is not common to all these plaintiffs; one plaintiff, Joyce Williams, seeks relief for age discrimination. To support this litany of allegedly discriminatory treatment, plaintiffs' Complaint details allegedly adverse actions taken by a multitude of different personnel and decisionmakers, at many different times over the course of nearly twenty years, in different stores and in different company districts spanning from Tampa and Orlando to Miami-Dade and Broward. These different events are improperly jumbled into one Complaint and the relief requested requires an examination of highly individualized damages involving many different types of employment positions and decisions.[3] *See* Exhibit A (chart summarizing complaint).

---

[2] Six plaintiffs allegedly were denied promotional opportunities to Pharmacy Manager (an in-store position filled by the Pharmacy Supervisor), three plaintiffs allegedly were denied promotional opportunities to Store Manager (an in-store position filled by the District Manager), and three plaintiffs allegedly were denied promotional opportunities to Pharmacy Supervisor (a district-wide position filled by the District Manager). *See* First Am. Compl. ¶ 4.

[3] Plaintiffs have already conceded this point. *See* Plaintiffs' Notice of Objection to Magistrate's Order of 11/2/00 at 3 (plaintiffs "are all college educated professional pharmacists who must all, *on an individual basis*, meet with their economist to discuss their past and present employment package in order for the economist to assess *the different impacts upon each individual Plaintiff*").

2

Case No. 00-6151-Civ-Huck/Brown

Based upon the plaintiffs' own allegations, these parties and these claims arise from separate and distinct transactions and occurrences – individualized employment and promotion decisions involving different positions at different times and different places. It is well settled in this District and others that the Court correctly exercises its discretion in such a case by severing the claims and parties under Rule 20. *See, e.g., Fleming v. Home Depot, U.S.A., Inc.*, 1998 WL 1674544 (S.D. Fla. 1998) (severing case in part because the promotions at issue involved different decisionmakers, different positions filled, in different years, by different employees); *Grayson v. K-Mart Corp.*, 849 F. Supp. 785, 790 (N.D. Ga. 1994) (severing demotion-related discrimination claims of 11 plaintiffs because different factual situations, work histories, witnesses, geographic areas, and decisionmakers created a "tremendous danger that one or two of plaintiff's unique circumstances could bias the jury against defendant generally, thus prejudicing defendant with respect to the other plaintiffs' claims.").[4]

## II. There is No Commonality Warranting Joinder Of These Plaintiffs

Not only do these plaintiffs fail the first requirement necessary for joinder of their multiple and distinct claims (which alone would be enough to prevent joinder), they also cannot satisfy the second prong of the test with regard to a common issue of law or fact. The Complaint primarily raises disparate treatment claims under Title VII and 42 U.S.C. § 1981. But the fact that all the claims arise under the same general law does not establish commonality of facts and law. *See Fleming*, 1998 WL 1674544 at *3. As in *Fleming*, different applications of that general law to

---

[4] *See also Byers v. Illinois State Police*, 2000 WL 1808558 (N.D. Ill. 2000) (denying joinder of additional plaintiff because of the differing time spans between the plaintiffs' employment and the alleged underlying discriminatory conduct, the different decision-makers involved, the different geographical areas of the state in which the conduct occurred and where the plaintiffs lived, and the different positions desired which involved different promotional procedures and criteria); *Bailey v. Northern Trust Co.*, 196 F.R.D. 513 (N.D. Ill. 2000) (denying joinder of allegedly race-based promotion decisions even when five plaintiffs worked in same department in part because no single supervisor was implicated in all claims and the claims extended over a period of fifteen months).

3

highly individualized claims, employment histories, and separate alleged acts of the defendant, makes it impractical and impossible to join such claims into one action.[5]

Moreover, in addition to the deficiencies under Rule 20(a), continued joinder of these claims and parties would severely prejudice Walgreens. Currently, the multiple employment decisions affecting each of the eight plaintiffs would be tried together, thereby requiring far more witnesses and evidence in this case than would be necessary in individual trials. The potential that some evidence would be relevant as to some, but not all, plaintiffs, and the prejudice caused by cumulative testimony paraded before the jury, weighs heavily in favor of severing the claims.[6]

The plaintiffs' Brief in response to this Court's Order merely provides a self-serving factual summary that has no basis nor support in the record, including the recitation of alleged problems of pharmacists *who are not parties to this action* (thereby making the need for severance even more striking). The plaintiffs then resort to the conclusory allegation, again without any record support, that a common nexus of law and facts exists here because Walgreens engages in subjective hiring practices that have a "systemic disparate impact" on black pharmacists. However, a close reading of the plaintiffs' brief and, more importantly, the plaintiffs' Complaint demonstrates that the plaintiffs are citing subjective hiring criteria as evidence of intentional discrimination (*i.e.* "systemic" discrimination) and still have no idea what a disparate impact claim is. To properly allege that a disparate impact claim exists here that is common to all these plaintiffs, they must set

---

[5] *See also Grayson,* 849 F. Supp. at 789 (Rule 20(a) does not permit any group of aggrieved employees to join their claims together; even if claims are based on same legal theories each employment decision was a discrete act supporting severance).

[6] *See Grayson,* 849 F. Supp. at 790. *See also Alexander v. Fulton County, Ga.,* 207 F.3d 1303, 1322 (11th Cir. 2000) (noting that "prejudicial effects of other witness' alleged discriminatory experiences may outweigh their probative value where, for example, the alleged discrimination occurs during different time periods[. . .]different supervisors make the challenged decisions [. . . or] the alleged discrimination happens at geographically removed places[,]" but determining that because none of these situations existed and the plaintiffs alleged a common intentional pattern and practice claim, the court had discretion to join related claims based on identical series of conduct by same decisionmaker).

forth a *neutral* employment practice which, while non-discriminatory on its face, has an adverse, disproportionate impact on a statutorily-protected group. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). These plaintiffs must thus **identify a facially neutral employment practice that has a significant statistical disparity** between the proportion of African-Americans in the available labor pool and the proportion of African-Americans promoted. *See EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263 (11th Cir. 2000). "This finding is essential to avoid the potential conflation of disparate treatment and disparate impact claims." *Id.* at 1278. This conflation, as occurred in *Joe's Stone Crab*, is quite evident here and is fatal to the desperate arguments in the plaintiffs' Brief that seek to prevent severance based on this flawed misunderstanding of the law.

Almost one year has passed since plaintiffs filed this lawsuit and they still cannot identify one single facially-neutral policy or practice. Rather, these plaintiffs identify alleged practices such as supervisory personnel failing to post vacancies and forcing black pharmacists to float, to work in black communities, to work in high crime communities, or to work in problematic stores. None of these practices, even if true, qualify as facially neutral; on the contrary, plaintiffs' allegations challenge facially discriminatory practices by certain individuals *allegedly* using their authority to discourage African-Americans from seeking promotions *because of their race*. These allegations do not give rise to a tenable disparate impact claim – at least for purposes of avoiding severance of what are simply individualized disparate treatment claims.[7] What remains are eight plaintiffs with eight different factual situations, eight sets of work histories, eight sets of witnesses and testimony, and allegations of unrealized promotions arising from the circumstances of each of plaintiffs' qualifications, performance, supervisors and stores. In essence, these are disparate treatment claims that have nothing in common except that each involves an African-American pharmacist – and that is simply not enough to permit joinder. Accordingly, the Court should sever these claims.

---

[7] *See id.* ("Since *Griggs*, we are aware of no case in which a *facially-discriminatory* practice has been challenged successfully under a disparate impact theory. Simply put, disparate impact theory is available for the challenge of [only] *facially-neutral* employment practices.").

5

Respectfully submitted,

STEEL HECTOR & DAVIS LLP
Attorneys for Defendant Walgreen Co.
200 South Biscayne Boulevard
Miami, Florida 33131-2398
(305) 577-7000 Telephone
(305) 577-7001 Telecopier

By: _____
Edwin G. Torres
Florida Bar No. 911569
Heather L. Gatley
Florida Bar No. 0050482
Brian L. Lerner
Florida Bar No. 0177202

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 22nd day of January, 2001, to:

Kelsay D. Patterson, Esq.
Law Offices of Michael M. Tobin, P.A.
1099 Ponce De Leon Blvd.
Coral Gables, Florida 33134-3319

By: _____
Edwin G. Torres

MIA_1998/640786-3

| Joyce Williams | Mia Dawn Taylor | Beraie Shorter-Meares | Delora Okoomah | Joseph McMullen | Carmita McMullen | Michael Ferguson | Constance Echebiri | PLAINTIFF |
|---|---|---|---|---|---|---|---|---|
| X | X | X | X | | | | X | FAILURE TO PROMOTE TO PHARMACY MANAGER |
| | | | | X | X | X | | FAILURE TO PROMOTE TO PHARMACY SUPERVISOR |
| X | | | | X | X | | | FAILURE TO PROMOTE TO STORE MANAGER |
| X | | | | | | | | TITLE VII RETALIATION |
| | | | | X | X | | | CONSTRUCTIVE DISCHARGE |
| X | | | | | | | | AGE CLAIM |
| | | | X | | | | | MANAGERS TOLERATED CUSTOMERS USING RACIAL SLURS TOWARD PLAINTIFF |
| X | | | | | | X | | NOT INFORMED OF OPENINGS |
| X | | | | | | | X | DENIED VACATION OR SICK DAYS |
| X | | | X | X | | | | SUBJECT TO UNFAIR OR HARSHER DISCIPLINE |
| X | X | X | X | X | | | X | DID NOT RECEIVE A PERMANENT STORE |
| X | | | | | | X | X | MANAGERS CREATED FALSE DISCIPLINARY RECORDS |
| | | | X | | | | | DID NOT RECEIVE PERFORMANCE EVALUATION |
| | | | X | | | | | SUBJECT TO IMPROPER OR UNJUSTIFIED TERMINATION |
| X (TO COMPLAIN ABOUT TRANSFERS) | | | | X (NOT TO CANCEL VACATION) | | X (NOT TO ACCEPT PROMOTION) | X (NOT | HOSTILE ENVIRONMENT RESULTING FROM DECISION |
| X | | | | | | | | FALSE ACCUSATIONS REGARDING PRESCRIPTIONS |
| TAMPA NORTH | MIAMI NORTH | MIAMI NORTH | MIAMI NORTH | MIAMI NORTH | FT. LAUDERDALE SOUTH | MIAMI NORTH | ORLANDO SOUTH | CURRENT DISTRICT |

EXHIBIT A